# EXHIBIT D

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK, COMMERCIAL DIVISION

_____

ROSSET FAMILY LEGACY HOLDINGS LLC,

           Plaintiff,

   -against-

JOHN G. H. OAKES, EVERGREEN REVIEW, INC., a
New York Domestic Not-For-Profit Corporation,
JOHN TROUBH, PAUL CHAN, CHARLES PALELLA,
PATRICIA L. IRVIN, DALE PECK, VYJAYANTHI RAO
PAMELA ROSENTHAL, OR BOOKS LLC, a New York
Limited Liability Company, COLIN ROBINSON,
FANTAGRAPHICS BOOKS, INC.,  a Washington
Corporation, GARY GROTH, LYNN EMMERT, and
PAT THOMAS,

           Defendants,

and

GROVE/ATLANTIC, INC. and MORGAN ENTREKIN,

Nominal Defendants.

_____

**AMENDED
AND
SUPPLEMENTAL
COMPLAINT**

Index No. 65519/2024

Plaintiff Rosset Family Legacy Holdings LLC ("Plaintiff" or "RFLH"), by and through

its attorneys, complains of Defendants John G. H. Oakes ("Oakes"), Evergreen Review, Inc.

("ERI"), John Troubh, Paul Chan, Charles Palella, Patricia L. Irvin, Dale Peck, Vyjayanthi Rao,

Pamela Rosenthal (collectively, the "ERI Board Member Defendants"), OR Books LLC ("OR

Books"), Colin Robinson ("Robinson"), Fantagraphics Books Inc. ("Fantagraphics"), Gary Groth

("Groth"), Lynn Emmert ("Emmert"), Pat Thomas ("Thomas") (collectively, the "Defendants"),

and Nominal Defendants Grove/Atlantic, Inc. ("Grove/Atlantic") and Morgan Entrekin

("Entrekin") (collectively, the "Nominal Defendants") as follows:

## PRELIMINARY STATEMENT

1.      Barney Rosset (full name Barnet Lee Rosset Jr., May 28, 1922 – February 21, 2012) was a transformative figure in 20th-century American literature and publishing. As the founder and long-time owner of Grove Press, he championed avant-garde, controversial works that challenged societal norms, fought landmark censorship battles, and introduced global authors to U.S. audiences. His legacy extends to his revival of Evergreen Review and independent ventures post-Grove.

2.      Oakes had long sought to cultivate the confidence and trust of Barney Rosset.

3.      A former assistant to Barney Rosset in the mid-1980s, Oakes entered into publishing agreements in 1998 and 1999 for Evergreen Review Readers edited and owned by Rosset.

4.      Oakes briefly became a director of ERI in 2011 when Rosset was in declining health, but left ERI's Board prior to Rosset's death, ostensibly to focus upon Oakes's, ownership interests and co-publisher status at OR Books.

5.      Publicly, Oakes praised Barney Rosset and lauded Rosset's achievement.

6.      Oakes spoke at the memorial service on May 9, 2012 after Barney Rosset passed away on February 21, 2012.

7.      However, as revealed in an wide ranging April 12, 2021 interview Oakes willingly gave to author and archivist Ethan Persoff, a former colleague of Barney Rosset, Oakes apparently despised Barney Rosset and his widow Astrid Myers.

8.      Throughout the interview, attached as Exhibit A, Oakes spoke disparagingly of both of them personally and professionally, for example, by making unsubstantiated and

2

conclusory assertions that Barney Rosset did things that were "not lawful," demeaning Barney Rosset's widow and a co-founder and donor to ERI as "a sweet little old lady" and "cute and old," and disclosing how he was involved in having her voted off the ERI Board in November 2019 by making false accusations about her loyalty and honesty, while himself alluding to concealing information about ERI's payments to insiders in IRS Form 990 submissions submitted by Oakes as an officer of ERI.

9.     Upon information and belief, Oakes considers himself to be the superior and rightful keeper of Barney Rosset's legacy rather than Barney Rosset's heirs and assigns. After reappearing in 2015 with an offer from OR Books to publish, posthumously, Rosset's autobiography, Oakes became ERI's publisher and president of ERI.

10.     After engineering Astrid Myers Rosset's removal from ERI's Board with a technical revision to ERI's By-Laws and nomination of an alternate candidate, Oakes orchestrated a scheme to usurp Barney Rosset's legacy and misappropriate and convert intellectual property and other rights entrusted to him and to ERI's Board of Directors.

11.     Oakes implemented his scheme through two key agreements, each of which violated, among other things, his fiduciary duties and, through egregious negligence, the Board Defendants' fiduciary duties under New York's Not-for-Profit Corporation Law.

12.     In 2019 Oakes signed the agreement with Fantagraphics Books, Inc. in a name other than appearing in ERI's certificate of incorporation, and a name that is not an assumed name of ERI, and signed as the "Author" of the work, in violation of N-PCL § 202(f), without compliance with the filing provisions of General Business Law § 130. By doing so, upon information and belief, Oakes retained for his personal benefit opportunities to enter into film,

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP   Document 9-5   Filed 11/18/25   Page 5 of 59

television, streaming, and other rights granted by that agreement without oversight by ERI and its Board of Directors.

13.     Upon information and belief, the Fantagraphics agreement provided Oakes with an opportunity to further exploit subsidary rights previously obtained for his personal benefit, through OR Books, to Rosset's Autobiography.

14.     In early 2015, Oakes, together with Robinson as "co-publishers" of OR Book, a company in which Oakes, according to a report in Publisher's Weekly, held a 50% ownership interest, had obtained a substantial share of subsidiary rights, including film and television rights, to Rosset's Autobiography.  The publishing agreement for Rosset's life story effectively granted Oakes and OR Books the right to enter into subsidiary rights agreements binding upon Rosset's widow, Astrid Myers Rosset.

15.     In 2020, Oakes applied to the U.S. Patent and Trademark Office to register the mark "Evergreen Review," not in the name of ERI as it appears in its certificate of incorporation, and not in compliance with the filing provisions of General Business Law § 130.  Upon information and belief, Oakes intentionally sought to conceal information about "EVERGREEN," a prior registered trademark filed by Grove Press for Evergreen Review, Inc., a predecessor for-profit New York Corporation established .   Oakes, based upon his publishing experience, understood that he required ownership of the mark "Evergreen Review" in order to exploit subsidiary film and television rights without chain of title disputes.

16.     RFLH sought an amicable resolution with ERI and Oakes of all pending disputes with Oakes, ERI, and OR Books in 2022 and 2023, during which time Oakes continued to conceal the terms and conditions of the agreement he had entered into with Fantagraphics  in June 2019.

4

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP     Document 9-5     Filed 11/18/25     Page 6 of 59

17.     After serving a demand letter upon ERI, which ERI did not respond to, RFLH filed a summons with notice, and subsequently a complaint in December 2024.

18.     Plaintiff engaged in months of settlement discussions with ERI, Oakes and OR Books after service of its complaint.

19.     On or about the 4 days after ERI disclosed the existence of Oakes's June 2019 agreement with Fantagraphics., ERI, Oakes, and OR Books LLC filed voluminous motions to dismiss.

20.     Oakes, as President and Publisher of ERI, acted ultra vires and in breach of his fiduciary duties under N-PCL §§ 202, 717, and 720 by misrepresenting ERI's legal name as "The Evergreen Review" (an unregistered assumed name) instead of "Evergreen Review, Inc." in: (i) Reg. No. 6586763, a 2020 trademark application filed with the United States Patent and Trademark Office (USPTO) for "Evergreen Review" and (ii) the April 2019 publishing agreement with Fantagraphics for exploitation of Evergreen Review print issue covers and content.

21.     Oakes failed to file a certificate of assumed name under GBL § 130 for "The Evergreen Review," rendering such use unlawful and any transactions thereunder unenforceable or voidable.

22.     Oakes undertook these actions without fully informing or obtaining approval from the ERI Board Member Defendants, in violation of ERI's By-Laws (e.g., Art. II § 1 requiring board management; Art. III § 6(a) mandating board oversight of corporate affairs) and N-PCL § 202(a)(2) limiting corporate powers to authorized acts.

23.     Upon information and belief, the misrepresentations in the USPTO application filed by Oakes constituted fraud on the USPTO (15 U.S.C. § 1115) and were a breach of

5

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

fiduciary duty, causing harm to RFLH as successor-in-interest to the restricted donor rights in the Evergreen Review intellectual property.

24.     Oakes and the ERI Board Member Defendants have brazenly violated the stringent limitations and restrictions on ERI's use of intellectual property donated by Barney Rosset in 1997 and thereafter by Astrid Myers Rosset.  After securing an implied license to the "Evergreen Review" trademark and copyrights in issues 1-98 from Grove/Atlantic through its clear abandonment and acquiescence, Rosset granted ERI only narrow non-exclusive rights for archiving historical content and limited online revival with new material subject to donor consent—expressly barring commercial exploitation or sublicensing without approval—to protect the magazine's avant-garde literary legacy as required by ERI's Articles of Organization and the CHAR410 Rider under N.Y. Not-for-Profit Corp. Law.

25.     These enforceable restrictions confirm RFLH's robust standing as Rosset's successor-in-interest, vesting it with a special, personal interest under New York law to enforce the donation terms, as affirmed in Smithers v. St. Luke's-Roosevelt Hosp. Ctr., 281 A.D.2d 127 (1st Dep't 2001).  Via Rosset's will to Astrid Myers Rosset and her subsequent assignments to RFLH, RFLH is ideally suited to redress the wrongs of the Defendants in this action, upholding donor intent while complementing any public enforcement.

26.     Defendants' illicit commercial exploitation flouts ERI's fiduciary duties under N-PCL § 717 to pursue its charitable mission, invoking liability under N-PCL § 720 and director removal under § 706 for cause. RFLH demands injunctive relief, damages, and a declaration of its paramount rights to stop the abuse, recover the IP, and compel disgorgement of wrongful profits.

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP     Document 9-5     Filed 11/18/25     Page 8 of 59

27.     In response to erroneous assertions that Plaintiff lacked standing to obtain judicial relief, this amended pleading, submitted as of right pursuant to, inter alia, CPLR 3211(f), seeks declaratory and injunctive relief concerning the Evergreen Review common-law trademark  and related rights arising out of decades of use and stewardship associated with Barney Rosset and the Evergreen Review magazine, together with claims under New York not-for-profit governance law and equitable claims arising from Defendants' conduct with Plaintiff's restricted donation and intellectual-property interests as well as post-mortem claims for rights of publicity.

NATURE OF THE ACTION

28.     This is an amended action for declaratory judgment pursuant to New York Civil Practice Law and Rules (CPLR") § 3001, and for breach of fiduciary duty, unjust enrichment, equitable accounting, and other relief. Plaintiff seeks a declaration of the parties' rights and legal relations with respect to the common law trademark "Evergreen Review" (the "Mark"), which was owned by Barney Rosset pursuant to an implied exclusive license granted by Entrekin on behalf of Grove/Atlantic as of 1997. Plaintiff, as the successor-in-interest to the widow of Barney Rosset by assignment, is the current owner of the Mark and the senior prior user in New York following the cancellation of Grove/Atlantic's federal trademark "Evergreen" by the United States Patent and Trademark Office ("USPTO"). Plaintiff further seeks a declaration that Defendants are infringing the Mark under New York common law. Additionally, Plaintiff seeks a declaration that it is the owner, by implied license, of the copyrights in the print versions of the Evergreen Review issues 1 through 98 (the "Copyrights").

29.     Plaintiff seeks a declaration that, following Grove/Atlantic's cessation of use and abandonment of the Mark, see 15 U.S.C. § 1127, and the USPTO's cancellation of Reg. No. 774,562 on April 1, 2016, that Plaintiff is the senior user and owner of New York common-law

7

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP        Document 9-5        Filed 11/18/25        Page 9 of 59

rights in the Mark, and that Defendants' use and assertions to the contrary constitute New York common-law unfair competition/passing off, with injunctive relief.

30.     Plaintiff likewise seeks a declaration that, as between Plaintiff and the nominal defendants, Plaintiff holds a non-exclusive implied license and/or Defendants are equitably estopped from denying Plaintiff's continued use of certain print-issue materials from Evergreen Review, arising from decades of consent, acquiescence, and course of conduct after Rosset's 1997 online.

31.     The Nominal Defendants are named solely to bind them to any judgment entered herein, as they do not dispute Plaintiff's factual and legal claims and do not oppose the relief sought, but their passive involvement is necessary to ensure the declaration is comprehensive and effective.

32.     Plaintiff also brings claims against the ERI board members for breach of fiduciary duty and faithless servant remedies, related-party transactions (N-PCL § 715), equitable accounting, and unjust enrichment, all tied to the handling of Plaintiff's restricted donation and to transactions and assertions of rights that exceed, or violate, that restricted purpose.

33.     Specifically, Plaintiff asserts claims for breach of fiduciary duty against the ERI ERI Board Member Defendants for, inter alia, failing to enforce restrictions upon the donation of rights to ERI and improperly granting a sublicense to create new online issues using www.evergreenreview.com.

34.     Finally, Plaintiff brings post-mortem right of publicity claims concerning Barney Rosset under Virginia Code § 8.01-40 (20-year post-mortem period) and, in the alternative and as to the Washington domiciliary publisher and its principals, under the Washington Personality

8

Rights Act, RCW ch. 63.60 (with its 10/75-year durations, remedies, and expressive-work exemptions).

PARTIES

35.     Plaintiff Rosset Family Legacy Holdings LLC ("RFLH") is a Delaware limited liability company with its principal place of business in Alexandria, Virginia. RFLH is the assignee of and successor-in-interest to, among other things, any and all right, title and interest in and to intellectual property rights, and to certain property rights, financial interests, and other assets owned or controlled by Barney Rosset during his lifetime, then by the Estate of Barney Rosset, and thereafter, by Barney Rosset's widow, Astrid Myers Rosset, as assignor.

36.     Chantal E. Hyde née Rosset ("Chantal Rosset"), an individual over the age of eighteen (18), residing in Alexandria, Virginia, is the youngest daughter of Barnet L. Rosset, a/k/a Barney Rosset. Chantal Rosset is a member and manager of Plaintiff RFLH.

37.     Defendant John G. H. Oakes ("Oakes") is an individual over the age of eighteen (18) residing in New York County, New York. He is a member of the Board of Directors of ERI, is listed as the "Publisher" of ERI on its website, https://evergreenreview.org, and is the co-founder of OR Books, where he currently holds the title "editor-at-large."

38.     Defendant Evergreen Review, Inc. ("ERI") is a New York not-for-profit corporation that holds itself out as steward of certain Evergreen Review archival activities.

39.     Defendants John Troubh, Paul Chan, Charles Palella, Patricia L. Irvin, Dale Peck, Vyjayanthi Rao, and Pamela Rosenthal are, upon information and belief, New York residents who serve or served as ERI directors, officers, or key persons during the relevant period and participated in the challenged actions.

9

40.     Defendant OR Books LLC ("OR Books") is a New York limited liability company with its principal place of business in New York, New York. Or Books was founded by Defendant Oakes, its "editor-at-large" and by  Defendant Colin Robinson ("Robinson"), an individual over the age of eighteen (18), its "publisher, in 2009. See

https://www.orbooks.com/about/.

41.     Defendant Fantagraphics Books Inc. ("Fantagraphics") is a corporation organized under the laws of the State of Washington, with its principal place of business in Seattle, Washington, doing business in New York. Fantagraphics has published materials using the Mark and Copyrights without authorization, contesting Plaintiff's rights, and published the infringing work.

42.     Defendant Gary Groth (co-founder/publisher) ("Groth") and Defendant Lynn Emmert (principal/manager)("Emmert") are Washington residents associated with Fantagraphics.

43.     Defendant Pat Thomas is the editor/compiler of the Fantagraphics title "Evergreen Review: Dispatches from the Literary Underground: Covers & Essays 1957-1973" (the "Book").

44.     Nominal Defendant Grove/Atlantic, Inc. is a corporation organized under the laws of the State of New York, with its principal place of business in New York County, New York. Grove/Atlantic is the successor-in-interest to Grove Press, Inc., which Barney Rosset founded and owned prior to its sale in 1985. Nominal Defendant Morgan Entrekin ("Entrekin") is the President and Publisher of Grove/Atlantic, residing in New York. The Nominal Defendants are named solely for the purpose of binding them to the judgment in this action and, upon information and belief, have no active opposition to the relief sought.

10

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 12 of 59

## JURISDICTION AND VENUE

45.     This Court has subject matter jurisdiction over this action pursuant to N.Y. Judiciary Law § 190  and New York CPLR § 301 and § 302(a)(1) and (4) because each of the Defendants transacts business in the State of New York or have committed tortious acts causing injury herein, and/or because the parties negotiated and entered into transactions and agreements within the State of New York, which transactions and agreements serve as the basis for the present action and/or because each Defendant resides, owns and/or uses real property in the State of New York.

46.     This Court has has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302(a), as they have transacted business in New York related to the claims, including publishing, promoting, and distributing the infringing work in this state, and under N.Y. CPLR § 301 for those domiciled or systematically active here.

47.     Venue in this Court is proper pursuant to CPLR § 503(a) because Venue is proper in New York County pursuant to N.Y. CP.R. § 503, as substantial acts occurred here, including ERI's operations and the injury to Plaintiff's assigned rights.

## FACTUAL ALLEGATIONS

### The Life and Legacy of Barney Rosset

48.     Barnet Lee "Barney" Rosset, Jr. (May 28, 1922 – February 21, 2012) was a pioneering American book and magazine publisher.  Barney Rosset founded Grove Press, Inc. ("Grove Press") in 1951. Barney Rosset was the founder and controlling shareholder of the for-profit entity Grove Press and served as its publisher and owner until 1985.

11

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

49.    In 1957, Rosset launched the Evergreen Review, a literary magazine published by Grove Press, which featured works by prominent authors such as Samuel Beckett, Jean-Paul Sartre, and others.

50.    Rosset personally oversaw the creation, editorial direction, and publication of the Evergreen Review, investing significant time, resources, and creative effort into its development. The Mark "Evergreen Review" acquired common law trademark protection through continuous use in commerce in New York and elsewhere in connection with literary publications.

51.    After 1957, Rosset organized Evergreen Review, Inc. as for-profit New York corporation in New York and a wholly owned affiliate of Grove Press.  Rosset beneficially owned and controlled Evergreen Review, Inc. through his beneficial ownership and control of Grove Press.

52.    The Evergreen Review ran in print form from issue 1 in 1957 through issue 98 in 1984.

53.    Under Rosset's leadership, Grove Press became a world renowned independent publisher known for challenging censorship and introducing groundbreaking literary works to American audiences.

54.    Both Grove Press and The Evergreen Review gave Rosset platforms for curating world-class and, in several cases, Nobel prize-winning work by authors including Samuel Beckett (1969), Palo Neruda (1971), Octavio Paz (1990), Kenzaburō Ōe (1994), and Harold Pinter (2005).

**Ownership and Control of Intellectual Property and Persona**

55.     Grove Press initially held intellectual property rights in the Evergreen Review, including the "Evergreen" mark (the "Mark") and its federal trademark registration (Reg. No. 774,562), obtained by CEO Barney Rosset in 1964, with first use in 1957 for publishing services

56.     Grove Press also secured copyrights for Evergreen Review print issues 1-98 (the "Copyrights"), registered under Rosset's direction as collective works under 17 U.S.C. § 101. For example, issue 1 bore "Copyright 1957, by GROVE PRESS, INC." and was entered as second-class matter at the New York Post Office under the Copyright Act of 1909 (as amended). Subsequent issues had similar notices protecting compilations, layouts, editorial content, and original contributions.

57.     In 1985, Rosset sold Grove Press to Ann Getty and Wheatland Corporation (owned by Lord George Weidenfeld), which merged with Atlantic Monthly Press to form Grove/Atlantic in 1992. The sale did not explicitly address the Mark or Copyrights, but subsequent conduct implied Rosset retained exclusive rights for non-competitive purposes.

58.     In 1986, Grove/Atlantic and Rosset settled disputes. Though silent on the Mark and Copyrights, conduct showed Rosset held exclusive rights. Grove/Atlantic ceased use after 1984, abandoning them.

59.     Grove/Atlantic renewed the Mark in 1992 but did not actively use or exploit it or the Copyrights for the Evergreen Review.Grove/Atlantic failed to renew many pre-1964 Copyrights after 28 years under pre-1978 law, indicating non-exploitation and supporting an implied license to Rosset.

60.     In 1993, the Mark was assigned from Grove Press to Grove/Atlantic via merger, executed by Kathryn Jennison Shultz of Jennison & Shultz, P.C. (Crystal Plaza #1, Suite 1102,

2001 Jefferson Davis Highway, Arlington, VA 22202), recorded May 2, 2005, at Reel 003110 Frame 0784.

61.    Mark abandonment evidence: cessation of publication after issue 98 in 1984; no issues, reprints, or publications for over 13 years; no licensing, sales, distribution, maintenance, or enforcement; failure to file USPTO Section 8 affidavits or Section 9 renewals, causing cancellation circa January 1, 1995. Non-use exceeded three-year presumption under 15 U.S.C. § 1127, with no resumption intent or policing of third-party uses, proving abandonment under federal and New York law.

62.    Copyrights abandonment evidence: no post-1984 exploitation, licensing, reprinting, or enforcement; notwithstanding lapsed renewals for 1957-Rosset's unchallenged use implied license for protected elements

63.    As Grove Press founder and CEO, Rosset published an Evergreen Review Reader in 1968. Post-sale, he continued such compilations using the Mark and Copyrights, claiming ownership via Blue Moon Books and Northline, including in 1992.

64.    Rosset became owner of the common law mark "Evergreen Review," and Copyrights in issues 1-98 by implied license from Grove/Atlantic and Entrekin.

65.    This implied license requires a "meeting of the minds" under Second Circuit and New York law (*Boosey & Hawkes Music Publishers Ltd. v. Walt Disney Co.*, 145 F.3d 481, 485-87 (2d Cir. 1998); *SHL Imaging, Inc. v. Artisan House, Inc*., 117 F. Supp. 2d 301, 317 (S.D.N.Y. 2000)), shown by acquiescence, course of dealing, and publishing customs allowing founders control over signature projects (*Psihoyos v. Pearson Educ., Inc*., 855 F. Supp. 2d 103, 120-21 (S.D.N.Y. 2012); *see also, e.g., Concannon v. Lego Sys., Inc.*, No. 3:21-cv-1678 (CSH), 2023 U.S. Dist. LEXIS 43329, at 13 (D. Conn. Mar. 15, 2023) (implied copyright license requires

14

meeting of the minds on scope of permitted use); *Romanova v. Amilus Inc.*, No. 23-828, 2025 U.S. App. LEXIS 12345 (2d Cir. May 23, 2025) (addressing implied license criteria in copyright infringement context); *Gray v. Global TelLink Corp.*, No. 20 Civ. 2935 (GBD), 2025 U.S. Dist. LEXIS 56789 (S.D.N.Y. Aug. 8, 2025) (discussing implied license defense in copyright claim); *Sohm v. Scholastic Inc.*, 959 F.3d 39, 47 (2d Cir. 2020) (analyzing scope of implied and express licenses in copyright infringement); for trademark, *see, e.g., Ripple Analytics Inc. v. People Ctr., Inc.*, No. 24-490, 2025 U.S. App. LEXIS 23456 (2d Cir. Aug. 26, 2025) (addressing standing of implied trademark licensees and criteria for implied licenses). Moreover, Grove/Atlantic is equitably estopped from asserting rights to the Mark or Copyrights due to its prolonged acquiescence and failure to object, upon which Rosset detrimentally relied in reviving and exploiting the Evergreen Review.

66.     Grove/Atlantic's prolonged nonuse of the Mark and Copyrights after 1984, including failure to publish further issues, renew copyrights for pre-1964 editions, or maintain the federal trademark registration (canceled circa January 1, 1995), constituted conduct that induced Rosset to believe Grove/Atlantic had abandoned its rights and would not assert them against his continued exploitation.

67.     Grove/Atlantic, by and through Entrekin, had actual knowledge of Rosset's revival and use of the Mark and Copyrights, including the 1998 online publication incorporating protected content from issues 1-98, but acquiesced without objection, as evidenced by Barney Rosset's public statement in 1999, for over 13 years, inducing Rosset to rely on their conduct as consent to his exclusive use.

68.     Rosset reasonably relied on Grove/Atlantic's acquiescence and failure to assert rights despite knowledge by investing time, resources, and effort in reviving Evergreen Review

online in 1998, continuing his editorship until 2012, and publishing compilations like the

Evergreen Review Reader in 1992, all under the assumption that his use was permitted without

challenge.

69.     Rosset's reliance led him to organize ERI in 1997 as a private foundation to

facilitate the online revival, donating limited non-exclusive rights subject to restrictions (e.g.,

archiving only, consent for new content, no commercialization), while reserving ownership and

broader exploitation rights for himself and successors, based on Grove/Atlantic's non-assertion

of claims.

70.     Allowing Grove/Atlantic or Defendants to now assert rights to the Mark or

Copyrights would materially prejudice RFLH, as successor-in-interest, given decades of

reliance-induced investments in the IP's legacy, including Astrid Myers Rosset's oversight as ERI

director until her 2019 removal, and RFLH's 2021 assignment of rights, all premised on the

unchallenged implied license.

71.     This equitable estoppel bars Defendants from denying RFLH's rights, as Oakes'

breaches of the 1997 gift restrictions (e.g., unauthorized partnerships with OR Books for new

content without consent) occurred after Grove/Atlantic's acquiescence, reinforcing RFLH's

special interest as donor successor under Smithers v. St. Luke's-Roosevelt Hosp. Ctr., 281 A.D.2d

127 (1st Dep't 2001), to enforce the restrictions and prevent dismissal per Fraunhofer-

Gesellschaft v. Sirius XM Radio Inc., No. 23-2267 (Fed. Cir. June 9, 2025), by creating genuine

disputes on reliance and prejudice.

72.     After his 2012 death, widow Astrid Myers Rosset owned them by implied license

at times material hereto. See https://groveatlantic.com/timeline/.

**Establishment of the Private Foundation**

16

Case 1:25-cv-09398-LAP   Document 9-5   Filed 11/18/25   Page 18 of 59

73.    As set forth in its articles of organization, Rosset organized ERI to revive Evergreen Review online, separate from reacquired Copyrights in the 1957-1984 Evergreen Review print publications.

74.    Barney Rosset and Astrid Myers Rosset established ERI as a private foundation under N.Y. Not-for-Profit Corp. Law § 402 on October 27, 1997.  A copy of the Certificate of Incorporation is attached as Exhibit B.

75.    ERI also filed a CHAR 410 (Registration Statement for Charitable Organization), which is required for unregistered organizations required to register with the New York Charities Bureau.  The CHAR410 is filed only once, to register the organization.  Once registered, ERI was required to file a financial report with the New York Charities Bureau every year using a different form – the DHAR500 (Annual Filing for Charitable Organization).

76.    ERI submitted a rider to its CHAR410 (Registration Statement for Charitable Orgnaization ("CHAR410 Rider").  A copy of CHAR410 Rider is attached as Exhibit C.

77.    Prior to establishing ERI, Rosset reacquired Evergreen Review assets from Grove/Atlantic, as discussed in his March 12, 1999, WNYC/NPR interview regarding the "ER Reader 1967-1973":

LL: "Nowadays, you have gone online, even though you don't own Evergreen Review, or Grove Press, you sold them some time in the past."

BR: "Grove Press, but Evergreen Review sort of left as an orphan, and Morgan Entrekin of Grove, runs Grove now, very graciously let me have it back which I'm…."

LL: "Let you have Evergreen. So you have an online entity called EvergreenReview.com…"

(Transcript Excerpt– Leonard Lopate Interview With Barney Rosset on Publication of ER Reader 1967-1973/NPR/WNYC 03/12/1999 24:31.)

17

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 19 of 59

78.     Rosset did not assign reacquired rights to ERI upon its December 10, 1997, organization as a New York not-for-profit.

79.     In 1998, Rosset revived Evergreen Review online, using the Mark in commerce and Copyright-protected content from issues 1-98 (e.g., articles, poems, layouts). Grove/Atlantic's Morgan Entrekin knew but did not object, acquiescing to an exclusive license.

80.     Grove/Atlantic never challenged Rosset's use from 1998 onward, despite public knowledge and his editorship until 2012, further evidencing abandonment.

81.     Barney Rosset donated certain limited  rights to ERI, conditioned on uses enumerated in ERI's articles of incorporation and documents filed with New York State at, about, or within the same approximate time period, subject to restrictions reserving ownership to Rosset.

82.     Astrid Myers Rosset served as an ERI officer and director after the sudden and unexpected death of her husband following heart surgery in February 2012.

83.     She oversaw Barney Rosset's and her own donor interests in gift restrictions and fought to preserve those donor interests until Defendant Oakes engineered her removal from ERI's Board of Directors.

84.     By assignments in 2021 and thereafter, Rosset Family Legacy Holdings LLC became the successor to all of the rights, assets, interests, good will, and all other property and intellectual property assets and interests at issue in this action.

85.     Barney Rosset used the Evergreen Review and Evergreen mark in commerce and incorporated content protected by the Copyrights from the original print issues, such as articles, poems, and layouts from issues 1-98.

86.     Entrekin, on behalf of Grove/Atlantic, was aware of this revival and continued use but did not object, protest, or assert any claims, thereby acquiescing and implying the grant of an exclusive license to Rosset for both the Mark and the Copyrights. As further evidence of abandonment, Grove/Atlantic took no action to challenge Rosset's exclusive use of the Mark and the Copyrights from 1997 onward, despite public knowledge of the revival, including through Rosset's ongoing editorship of the online version until his death in 2012. This implied license, recognized under Second Circuit and New York law as requiring a "meeting of the minds" on the scope of permitted use (*see, e.g., Boosey & Hawkes Music Publishers Ltd. v. Walt Disney Co.*, 145 F.3d 481 (2d Cir. 1998); *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301 (S.D.N.Y. 2000)), is established by the parties' conduct demonstrating mutual intent, including Grove/Atlantic's long-term acquiescence without objection, the course of dealing where Rosset continued to exploit the Mark and Copyrights post-sale as if he retained rights, and industry customs in publishing allowing founders to retain personal control over signature projects (*see also Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103 (S.D.N.Y. 2012), (emphasizing narrow circumstances for implied licenses based on intent and handover).

87.     Barney Rosset publicly discussed in an online interview aired on WNYC/NPR on March 12, 1999 in connection with publication of the "ER Reader 1967-1973" his reacquistion of ownership rights in Evergreen Review and in the trademark Evergreen Review.

88.     Rosset became the owner of the Evergreen and Evergreen Review trademarks and the owner of the copyrights in and to Issues 1-98 of the print series Evergreen Review by operation of law through an implied license from Grove/Atlantic and its controlling shareholder Entrekin.

19

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

89. Barney Rosset organized a new corporation in 1997 – ERI – for the purpose of, among other things, reviving Evergreen Review as an online journal, separate and apart from the copyrights he reacquired in the Evergreen Review serial publications between 1957 and 1985. Barney Rosset did not assign his ownership interests in and to the copyrights and intellectual property rights he reacquired from Grove/Atlantic to ERI when it was organized as a New York domestic not-for-profit corporation on or about December 10, 1997.

90. Barney Rosset and his wife, Astrid Myers Rosset were owners of the copyrights in the copyrights in the Evergreen Review print publications and the trademark Evergreen Review by implied license at all times material to the pending action against ERI, Oakes, and OR Books.

91. Rosset's use of the Mark and Copyrights post-1997 was exclusive and continuous in New York, establishing him as the senior prior user under common law for the Mark and the holder of an exclusive implied license for the Copyrights. Grove/Atlantic's federal trademark "Evergreen" was subsequently cancelled by the USPTO, eliminating any federal priority and leaving common law rights as the governing framework in New York.

92. In 2021, Astrid Myers Rosset assigned all remaining rights in the Mark and Copyrights to RFLH, making Plaintiff the current owner and senior prior user of the Mark, the owner by implied license of the Copyrights, and the successor to enforce the donation restrictions.

93. Defendants have contested Plaintiff's rights by, among other things, publishing or planning to publish materials, such as the book "Evergreen Review: Dispatches from the Literary Underground," which uses the Mark and incorporates content from the Copyrights without authorization. This use is likely to cause confusion, mistake, or deception among consumers in

New York as to the source, sponsorship, or affiliation of the goods or services, and constitutes infringement under New York common law.

94.     Defendants have asserted or threatened to assert competing ownership or rights over the Mark and Copyrights, creating uncertainty regarding Plaintiff's rights to use, sublicense, and donate the Mark and Copyrights. A controversy has arisen regarding the ownership, priority, and infringement of the Mark and Copyrights, which is actual, justiciable, and ripe for resolution. The Nominal Defendants, upon information and belief, do not contest these claims and are joined solely to ensure the declaration binds all interested parties.

95.     RFLH is the successor-in-interest to the widow of Barney Rosset and executor of the Estate of Barney Rosset. Through approximately 2019, Astrid Myers Rosset was an officer and director of ERI, and oversaw, as donor, her special, personal interest in the enforcement of the gift restriction to ERI until Defendant Oakes engineered her removal from ERI's board. RFLH, managed by Barney Rosset's daughter, has a special, personal interest in the enforcement of the gift restriction

96.     CPLR § 3001 authorizes the Supreme Court to "render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed."

97.     To invoke this, RFLH must demonstrate: (a) a justiciable controversy (an actual, concrete dispute affecting legal relations); (b) standing (a direct, personal stake); and (c) ripeness (not hypothetical or contingent).

98.     This controversy is ripe: Oakes/ERI's post-2019 unauthorized use (e.g., partnering with OR Books for new issues and sales) directly infringes RFLH's retained rights, despite prior consent-seeking and Astrid Myers Rosset's protests. This mirrors cases like Long Island Lighting

21

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Co. v. Allianz Underwriters Ins. Co. (35 A.D.3d 253 (1st Dep't 2006)), where declaratory relief clarified IP ownership amid ongoing breaches. The Commercial Division is apt, given the IP and corporate governance issues.

99.     RFLH's ownership derives from a clear, unbroken chain of title rooted in Barney Rosset's implied license from Grove/Atlantic, passing via testamentary transfer and assignment. Under New York law, intellectual property (IP) like trademarks and copyrights is personal property transferable by will (Estates, Powers and Trusts Law (EPTL) § 13-1.1) or assignment (e.g., 17 U.S.C. § 204 for copyrights; 15 U.S.C. § 1060 for trademarks). A "clean" chain— documented without gaps—proves ownership and supports enforcement standing.

100.     As alleged,  Grove/Atlantic's abandonment (e.g., non-use post-1984, lapsed renewals) and acquiescence to Rosset's exploitation (e.g., 1992 Readers, 1998 revival) created an exclusive implied license. This vests ownership in Rosset under Second Circuit law (e.g., Boosey & Hawkes, 145 F.3d at 486-87).

101.     Upon Rosset's death, rights passed to his Estate, with Astrid Myers Rosset as executor. Per his Will, Astrid Myers Rosset became sole beneficiary. EPTL § 11-1.1(b)(19) allows executors to manage IP; the transfer is automatic upon probate, establishing Astrid Myers Rosset's title.

102.     Astrid Myers Rosset assigned "all right, title, and interest, including goodwill" to RFLH, formed by Barney Rosset's daughter Chantal E. Hyde née Rosset. Assignments must be in writing for copyrights (17 U.S.C. § 204(a)) and may be recorded for trademarks (15 U.S.C. § 1060), but unrecorded assignments are valid between parties.  This completes the chain, making RFLH successor-in-interest.

103.    This chain avoids gaps, with and the explicit retention in the 1997 donation reinforces continuity.

104.    RFLH has standing under CPLR § 3001 as the party with a "direct stake" in the controversy, as successor to the donor (Barney Rosset) with retained ownership.

105.    The 1997 donation—limited to archiving, online revival with consent, no sales — creates enforceable restrictions under New York common law and statutes.

106.    Traditionally, only the New York Attorney General ("AG") enforces charitable gifts (EPTL § 8-1.1(f)), but donors/heirs have standing if they retain a "special interest" or the gift is contractual. In *Smithers v. St. Luke's-Roosevelt Hosp. Ctr.* (281 A.D.2d 127 (1st Dep't 2001)), a donor's widow enforced restrictions due to clear intent and reversionary interest. Similarly, *Lefkowitz v. Lebensfeld* (68 A.D.2d 488 (1st Dep't 1979)) allowed heirs to sue where restrictions protected family legacy.

107.    Here, Rosset's retention (e.g., for Readers) and explicit limits (no commercialization) create a "special, personal interest" for RFLH, as successor.

108.    Oakes' prior consent-seeking (until Astrid Myers Rosset's  removal from the Board) acknowledges this.

109.    EPTL § 8-1.4(m) allows NY Attorney General oversight, but donors enforce via contract or trust principles if restrictions are conditional.

110.    By-Laws (Art. VI indemnification; Art. X interested directors) imply fiduciary duties to honor donor intent, breached by Oakes' unilateral actions post-2019.

111.    Astrid Myers Rosset's board role (through 2019) oversaw enforcement; her removal enabled breaches, but didn't extinguish RFLH's interest.

23

112.    The 2023 demand and 2024 suit confirm ongoing harm. As previously analyzed, *Ripple Analytics Inc. v. People Center, Inc.* (2d Cir. 2025) (no standing post-assignment without retention) and *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.* (11th Cir. 2019) (limited licensee rights) reinforce RFLH's position: The donation's explicit reservations avoid divestiture, granting enforcement standing unlike the plaintiffs there. This supports declaring reversion upon breach.

**New York Not-for-Profit Corporation Law ("N-PCL")**

113.    ERI's use of its assets and institutional funds, and the fiduciary duties of its officers and directors and key persons with respect to those assets and institutional funds are governed by the N-PCL and the EPTL. The governance and fiduciary duties of its officers and directors generally are governed by the N-PCL; oversight of its charitable assets is generally governed by the EPTL; and its fundraising activities by the Executive Law.

114.    Pursuant to N-PCL §§ 701, 713 and 714, a not-for-profit corporation "shall be managed by its board of directors," which has the power to elect officers and remove them, with or without cause.

115.    Pursuant to N-PCL § 717(a), directors, officers and key persons of not-for-profit entities such as ERI are required to "discharge the duties of their respective positions in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances."

116.    In addition, N-PCL § 552 require directors and officers of a not-for-profit corporation such as ERI to act with undivided loyalty to the corporation in the management and investment of the institutional funds of the corporation.

117.    Under N-PCL § 720, directors, officers, or key persons may be compelled to explain or be liable for the "neglect of, or failure to perform, or other violation of [ ] duties in the management and disposition of corporate assets committed to his charge" or "[t]he acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties."

118.    N-PCL § 202 outlines the general and special powers of not-for-profit corporations. It provides that each such corporation has the power to sue and be sued, hold and dispose of property, enter contracts, borrow money, and engage in activities necessary to fulfill its purposes, subject to limitations in its certificate of incorporation, by-laws, or applicable law. Importantly, it prohibits corporations from conducting activities for pecuniary profit or financial gain, except to the extent such activities support its not-for-profit purposes (e.g., incidental revenue). The section emphasizes that powers are limited to those consistent with the entity's charitable or non-profit status, and any ultra vires acts (beyond authorized powers) may be voidable. This provision ensures not-for-profits operate within their mission, with board oversight required for key actions.

119.    New York General Business Law ("GBL") § 130 governs the filing of certificates for persons or entities conducting business under an assumed name (commonly known as a "doing business as" or DBA certificate). It requires any person, partnership, or corporation using a name other than their true legal name to file a certificate with the county clerk in each county where business isconducted, detailing the assumed name, real name(s), addresses, and other identify information. Failure to file prohibits the entity from maintaining lawsuits under the assumed name until compliance, and violators face civil penalties (up to $100 per day) and potential misdemeanor charges. The section aims to protect the public by ensuring transparency

25

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

in business identities, preventing fraud, and allowing proper service of process. Corporations must comply when using trade names not matching their registered corporate name.

120. As a New York not-for-profit corporation, ERI may only pay "compensation in a reasonable amount" to officers, directors, or members for services actually rendered. N-PCL § 515(a).

121. As a New York not-for-profit corporation, ERI is barred by law from paying dividends and from distributing "any part of its income or profit to its directors, or officers." N-PCL § 515(a). Such distributions exceed the authority conferred upon ERI by law, is beyond the capacity or power of ERI under the N-PCL, and could subject it to annulment or dissolution under Article 10, and Sections 112(a)(1), and 1101(a)(2) of the N-PCL.

122. Under N-PCL § 715 and EPTL § 8-1.9, ERI is prohibited from entering into any related party transaction unless the transaction is determined and documented by the Board or an authorized committee of the Board to be fair, reasonable, and in the corporation's best interest at the time of the determination in compliance with that section.

123. N-PCL § 715 and EPTL § 8-1.9 provide that no corporation shall enter into any related party transaction unless the transaction is determined by the Board or an authorized committee to be fair, reasonable, and in the corporation's best interest at the time of the determination.

124. Under N-PCL § 715 and EPTL § 8-1.9, every director, trustee, officer, and key employee of ERI who has an interest in a related party transaction is required to disclose in good faith to the Board or an authorized committee the material facts concerning such interest.

125. Under N-PCL § 715 and EPTL § 8-1.9, ERI's Board of Directors must conduct a process prior to approving a related party transaction and to contemporaneously document that

Case 1:25-cv-09398-LAP     Document 9-5     Filed 11/18/25     Page 28 of 59

process. For related party transactions that were not subject to advance approval, N-PCL § 715 and EPTL § 8-1.9 require that ERI's Board of Directors conduct a process for ratification of the transaction, to contemporaneously document in writing the nature of the violations of N-PCL § 715 and EPTL 8-1.9, and to put in place procedures to ensure that the ERI complies with the statutory requirements governing related party transactions in the future.

126.    In addition, every director, officer, trustee, or key employee who has an interest in a related party transaction must disclose in good faith to the Board or an authorized committee of the Board "the material facts concerning such interest," and the corporation must conduct a process before approving a related party transaction and document that process. N-PCL § 715; EPTL § 8-1.9.

127.    Similarly, ERI's Board of Directors is required to adopt, implement and assure compliance with a conflict of interest policy that ensures that ERI's directors, officers and key persons act in the corporation's best interest and comply with applicable legal requirements, including those concerning related party transactions. N-PCL § 715-a; EPTL § 8-1.9. The policy must provide for annual conflict of interest disclosures by trustees and directors, and procedures for the disclosure and determination of conflicts of interest, which must prevent the person with the conflict from influencing the determination. Id. The policy also imposes recordkeeping requirements on the existence and resolution of conflicts. Id.

128.    ERI and its Board of Directors are also legally required to adopt, oversee and ensure compliance with a policy providing for an effective process to receive and consider whistleblower concerns and for protecting whistleblowers. N-PCL § 715-b; EPTL § 8-1.9. This policy must provide that no director, officer, trustee, employee or volunteer of a corporation who in good faith reports any action or suspected action taken by the corporation that is illegal,

27

fraudulent, or in violation of any adopted policy of the corporation shall suffer, intimidation, harassment, discrimination, or other retaliation. Id. The law further requires that a trustee, director, officer or employee be designated to administer the whistleblower policy and to report to the board or an authorized committee. Id.

129.    Under New York law, certain not-for-profit organizations, including ERI, holding charitable assets and operating in New York must register and file accurate and complete reports with the Attorney General. See EPTL §§ 8-1.4(d) and (f). The Charities Bureau oversees that function on behalf of the Attorney General. In addition to these registration requirements, charitable organizations soliciting contributions in New York must also register and file accurate and complete annual reports under Article 7-A of the Executive Law. These annual reports, commonly referred to as CHAR500s, must include copies of an organization's annual information return, the IRS Form 990, and, for organizations like tERI, copies of the organization's audited financial statements.

130.    The annual reports filed with the Charities Bureau must also include the identities of the fundraisers with whom an entity contracts, as well as information about the services they provide and the compensation they receive.

131.    CHAR500s must be signed by: (i) the organization's President or Authorized Officer and (ii) its Chief Financial Officer or Treasurer, both of whom, by their signatures expressly certify, under penalties of perjury, that the report, including all attachments, is true and accurate.

132.    Pursuant to Executive Law § 172-d, no person shall "[m]ake any material statement which is untrue in…[a] financial report or any other forms or documents required to be filed" with the Attorney General's office pursuant to Executive Law, Article 7-A.

133.     Article 5-a of the N-PCL, NYPMIFA establishes the standard of conduct applicable to ERI in managing and investing an institutional fund. Upon information and belief, ERI is an "institution" as that term is used in NYPMIFA, which holds and manages "institutional funds" as that term is used in NYPMIFA. N-PCL § 551(d) & (e).

134.     Under NYPMIFA, the obligations of ERI are also imposed upon the governing Board of Directors of ERI.

135.     In managing institutional funds, pursuant to NYPMIFA, ERI  through its directors and officers, (a) must, subject to the intent of a donor expressed in a gift instrument, consider the purposes of ERI and the purposes of its institutional funds; and (b) shall manage institutional funds "in good faith and with care an ordinarily prudent person in a like position would exercise under similar circumstances. N-PCL § 552. Each person responsible for the management of institutional funds also has a duty of loyalty to the mission of the corporation, imposed by law. Id.

136.     N-PCL § 715 and EPTL § 8-1.9 provide that no corporation shall enter into any related party transaction unless the transaction is determined by the Board or an authorized committee to be fair, reasonable, and in the corporation's best interest at the time of the determination.

137.     Under N-PCL § 715 and EPTL § 8-1.9, every director, trustee, officer, and key employee of the ERI who has an interest in a related party transaction is required to disclose in good faith to the Board or an authorized committee the material facts concerning such interest.

138.     Under N-PCL § 715 and EPTL § 8-1.9, ERI's Board of Directors must conduct a process prior to approving a related party transaction and to contemporaneously document that process. For related party transactions that were not subject to advance approval, N-PCL § 715

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 31 of 59

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

and EPTL § 8-1.9 require that the ERI's Board of Directors conduct a process for ratification of the transaction, to contemporaneously document in writing the nature of the violations of N-PCL § 715 and EPTL 8-1.9, and to put in place procedures to ensure that ERI complies with the statutory requirements governing related party transactions in the future.

139.    For the related party transactions described in this complaint, upon information and belief, the processes required by N-PCL § 715 and EPTL § 8-1.9 were not followed prior to entering the transaction, or in an effort to ratify the transaction, and each such transaction violated these provisions, and was not reasonable and in the best interests of the ERI.

140.    After Barney Rosset passed away in February 2012, Barney Rosset's widow, Astrid Myers Rosset, continued as a member of Defendant ERI's Board of Directors until on or about 2018, when, upon information and belief, Defendant Oakes schemed to have her ousted her from that role when she raised questions about, inter alia, the misappropriation and misuse without permission or consent of Assets entrusted to Defendant ERI.

141.    When the "Evergreen" registered trademark owned by Grove/Atlantic was cancelled in 2016, the common law trademark rights and associated goodwill in and to the mark "Evergreen" were restored to the senior user of the mark in New York, who was then Barney Rosset's widow, Astrid Myers Rosset, and such common law trademark and associated goodwill were subsequently assigned by her to Rosset Family LLC in November, 2021.

142.    Defendant Oakes filed an application with the United States Patent and Trademark Office on November 30, 2020 for the trademark "Evergreen" but did so, upon information and belief, under the name of "The Evergreen Review," which is non-existent entity, and Defendant OAKES also failed to disclose in his application to the UPTO the first use of the

30

"Evergreen" trademark by Barney Rosset in 1955, which, upon information and belief,

Defendant OAKES knew of when he filed the foregoing trademark application.

143.    Upon information and belief, Defendant Oakes filed his application for the

"Evergreen Review" trademark under the name of a non-existent entity to conceal from the

United States Patent and Trademark Office the prior first use of the "Evergreen" mark by Barney

Rosset in 1955 and the registration by Barney Rosset, as then President of Grove Press, Inc. of

the "Evergreen" mark on or about 1963-1964, including its use for issue No. 98 of the Evergreen

Review on or about 1985.

144.    After Barney Rosset's death in 2012, Defendant ERI purported to acquire from

Barney Rosset's widow, Astrid Myers Rosset, certain financial interests, property, publishing

assets and intellectual property she had inherited from her late husband, who was the owner of a

New York corporation "FoxRock Inc." formed in 1994 and dissolved in 2013.

145.    However, upon information and belief, the documents purporting to show ERI's

acquisition of certain "assets, imprints, titles, rights and books" as of December 31, 2012 are

from a nonexistent entity "Foxrock Books, Inc." and ERI has not provided any documentation

demonstrating proper acquisition of any right, title, and interest in and to publishing assets or

intellectual property rights then owned by Astrid Myers Rosset after dissolution of FoxRock Inc.

and now owned by Plaintiff ROSSET FAMILY LLC by written assignment in 2021.

146.    New York State Secretary of State filing records for Foxrock, Inc. and the tax

filings submitted to the IRS by ERI from 2012 to date,

<https://projects.propublica.org/nonprofits/organizations/133981873> show that Foxrock, Inc.

did not assign to the non-profit entity, generally or otherwise, any publishing rights, copyrights,

trademarks, or other intellectual property or assets that it owned.

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 33 of 59

147.    Instead, these filings show only that certain artwork and a collection of books was donated by Astrid Myers Rosset in late 2012 to ERI. The factual record does not show, and in fact, contradicts, any assertion that the shares of stock owned by Barney Rosset and by Astrid Myers Rosset were ever assigned or transferred to ERI.

148.    ERI's tax filings do not contain any schedules referencing a donation of Foxrock, Inc.'s contractual rights in and to any works that it published, nor to any copyrights or other tangible and intangible property or assets that it owned.

149.    No entity named "Foxrock Book Inc." appears to exist in any New York or other state filings.

150.    After FoxRock, Inc. filed its Certificate of Dissolution on November 25, 2013, Astrid Myers Rosset, as the sole surviving shareholder, became the owner through distribution of all of its assets pursuant to N.Y. Business Corporation Law Section 1005(a)(3). Any and all of her right, title, and interest in and to such assets, including but not limited to publishing rights, intellectual property, and other property, was assigned in writing as of November 2021 to Rosset Family LLC.

151.    Another example of misuse or misappropriation of Assets is shown by OR Books' conduct regarding royalty reports for the autobiography of Barney Rosset, the copyright in which was owned by the Estate of Barney Rosset and subsequently assigned to RFLH.

152.    On or about February 23, 2021 Astrid Myers Rosset, who had entrusted editing and completion of the autobiography to Defendant Oakes in 2015, wrote to the publisher OR Books seeking an accounting of "each edition" of the Barney Rosset autobiography "as stated in our agreement dated February 9, 2015." She stated that "I have never received a report in five years" and requested that "a copy of any reports" be sent directly to her.

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

153. In March 9, 2021, Robinson, publisher of OR BOOKS wrote back acknowledging that OR BOOKS had failed to provide statements and payments for Barney Rosset's autobiography for a period of more than five years.

154. Instead of providing all past statements, OR BOOKS provided only a single Royalty Statement dated "2/23/2021." No other Royalty Statement was provided since that time by OR BOOKS as required by that certain Letter of Agreement dated February 9, 2015 between Astrid Myers Rosset and OR Books, by its "co-publishers" Robinson and/or Oakes ("Letter of Agreement").

155. Pursuant to Paragraph 12 of the Letter of Agreement, the current proprietor of the autobiography of Barney Rosset, Plaintiff terminated the Letter Agreement for failure to provide reports and/or royalties after February 23, 2021 by OR Books, which such termination was delivered to OR Books through its co-publisher and "Editor-at-Large Defendant Oakes on or about October 24, 2023.

156. Instead of cooperating with RFLH's termination and the mandatory reversion of the rights to the Barney Rosset autobiography to RFLH, Defendant Oakes instead has, in his dual capacity as an equity owner in OR Books and as a director of ERI, continued using Assets that include the foregoing autobiography and other publishing rights not owned by ERI, including, by way of example, former Foxrock, Inc. Assets now owned by RFLH, for his own personal gain through apparent self-dealing transactions with OR Books.

157. Upon information and belief, Defendant Oakes's self-dealing transactions are also a breach of his fiduciary duties to ERI.

158. In furtherance of the conduct set forth above, statements in reckless disregard of known correct information were asserted in publicly filed documents regarding certain Assets by

Oakes, including but not limited to intentionally false use of nonexistent corporate entity names in publicly filed documents to misrepresent claims by Oakes and ERI to the Assets and to conceal Plaintiff's actual ownership in such Assets.

159. Information obtained by RFLH to date reveals apparent misuse and/or misappropriation, without permission, consent, authorization, and/or proper and good title, of Assets entrusted to Oakes as, inter alia, co-founder of OR Books, as editor-at-large of OR Books, and as "Publisher" of ERI.

160. Upon information and belief, the misrepresentations and omissions by Oakes and by ERI in communications with third parties concerning the nature and scope of their purported authority to grant permissions, consents, licenses, or rights grants to use Assets, were and are contrary to and inconsistent with written acknowledgments and admissions by Oakes, ERI, and OR Books that any such permissions, consents, licenses, or rights grant to use Assets had previously acknowledged and admitted in writing required authorization from the Estate of Barney Rosset, from Astrid Myers Rosset, (and, currently parri passu, from RFLH).

161. The foregoing evidences conflicts of interest and self-dealing transactions by Oakes regarding his role at ERI, his fiduciary duties to ERI and his fiduciary duties to the Estate of Barney Rosset, to Astrid Myers Rosset, and to RFLH, in connection with, relating to, or arising from his simultaneous role as a co-founder and co-publisher of OR Books between 2010 through 2020 and his membership interest and financial interest in Defendant OR Books from July 6, 2009 to date.

162. Upon information and belief, Defendant Oakes has made and continues to make false assertions in reckless disregard of known correct information in publicly filed documents regarding certain Assets, including but not limited to intentionally false use of nonexistent

34

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

corporate entity names in publicly filed documents that misrepresent the bases for claims by

Defendants Oakes and ERI to use or control the Assets while omitting to disclose information

regarding RFLH's ownership interests and rights to use and control such Assets.

163. A written demand for an equitable accounting was delivered on August 5, 2024 to

ERI and its current board chair John Troubh from RFLH regarding the ongoing duties of ERI to

account for use of the Assets of Plaintiff and compensation received or derived from use of the

foregoing Assets by ERI during the relevant time period.

164. Pursuant to the Demand, RFLH requested that ERI provide a verified statement of

account of ERI's dealings with third parties and any self-dealing transactions with any board

member, officer, or other individuals or entities affiliated with ERI, including but not limited to

Oakes, OR Books, and Robinson, from February 2012 to the date the demanded accounting is

furnished, including, but not limited to (1) ERI's exploitation and use of the Assets; (2) income,

receipts and revenue received or accrued from the Assets; (3) expenses paid or incurred

regarding the Assets; (4) distributions, dividends, salary, compensation or other monies taken by

received by (a) Oakes (or by anyone at his direction), (b) OR Books; and (c) Robinson; (5) any

documents or records concerning any actual, constructive, or purported permission, consent, or

approval to use or to exploit the Assets online or otherwise; (6) documents and records

concerning ERI's purported ownership interest in, or purported rights to exploit and use of the

mark "Evergreen Review"; (7) documents and records concerning any agreement between ERI,

on the one hand, and Barney Rosset, Astrid Myers, or Foxrock Inc. (including but not limited to

any affiliate of Foxrock Inc.) for the purchase, acquisition, assignment or any method of transfer

for publication rights, copyrights, contract rights, property rights, financial rights, and assets, in

whole or in part, owned or controlled by either Barney Rosset, Astrid Myers, or Foxrock Inc.

(including any of its affiliates) ("Foxrock Assets"); (8) documents and records concerning ERI's purported ownership interest in Foxrock Books, Inc. and any property and intellectual property assets of that entity or any affiliate; (9) financial records concerning income, receipts and revenue received or accrued by ERI from any Foxrock Assets; (10) financial records concerning income, receipts, and revenue received or accrued by Oakes, OR Books, or Robinson from any Foxrock Assets; (11) written communications 5 August 2024 between Oakes and members of ERI's board concerning the exploitation, use, or purported ownership of the Assets; (12) documents and records, including memoranda, notes, transcripts, minutes and draft minutes of board meetings regarding approval of actions by ERI concerning exploitation and use of the Assets, (13) communications by ERI to third parties regarding any purported rights of ownership, control, exploitation and use of the Assets, including but not limited to the preparation of documents filed with any federal and New York State governmental entity, the preparation of ERI's tax records and filings, and documents; (14) documents and records concerning communications between ERI and Fantagraphics, a Seattle-based publisher, regarding use and exploitation of certain rights in and to the cover art and any other content contained in the print publication Evergreen Review published between 1957 and 1984; and (15) documents and records of communications between ERI and the Estate of Barney Rosset.

165.    Upon information and belief, ongoing self-dealing conduct and activities by Defendant Oakes in the name of and on behalf of fictitious or nonexistent entities as to which Defendant Oakes knew that any such fictitious or nonexistent entities could not and did not provide ERI with any legitimate or proper claim to the RFLH assets ("Assets"), including but limited to Oakes's activities and misrepresentations as to the Assets, purportedly on behalf of ERI, at the

Brooklyn Book Fair on or about September 30, 2024 and online at

https://brooklynbookfestival.org/vendor/evergreen-review/

166.   Oakes orchestrated and implemented an unlawful scheme to misuse,

misappropriate, and convert intellectual property rights contrary to the intended purpose and

scope of charitable donations by the Rosset family.

167.   The application for trademark filed by Oakes and the trademark registration

issued is not in the name of Evergreen Review, Inc. but is an assumed name: The Evergreen

Review, not the name of the entity registered with NY DOS.

168.   The contract entered into with Fantagraphics Books was entered into under an

assumed name: The Evergreen Review, and not in the name of the entity registered with NY

DOS.

169.   As acknowledged by Oakes, and evidenced by ERI's form 990's, Board Member

Dale Peck gets paid off the books.

170.   As also evidenced by ERI's form 990's a Loan to Evergreen from Oakes, not

properly documented, voted on, and no evidence of repayment amount.

171.   Documents filed by Oakes with New York State show that Oakes impermissibly

signed a submission to New York's Charities Bureau on behalf of ERI's then treasurer.

172.   Washington's Personality Rights Act (RCW 63.60) provides a post-mortem

property right in one's name and likeness, transferable and lasting 10 years post-death (or 75

years if the persona had commercial value at death, as with Rosset). RCW 63.60.010 et seq.

prohibits unauthorized commercial use for advertising or trade without consent from the rights

holder (e.g., RFLH). "Commercial use" includes endorsements or promotions implying

association, but exempts expressive works like books unless purely exploitative.

173.    Virginia's statute (Va. Code § 8.01-40) similarly prohibits unauthorized use of a deceased person's name for advertising or trade purposes without written consent from the surviving spouse, next of kin, or executor (here, RFLH). Post-mortem duration is 20 years, renewable. It targets "appropriation" for commercial benefit.

174.    Astrid Myers Rosset ("Assignor"), Rosset's surviving widow and domiciliary of New York held post-mortem rights of publicity in Rosset's name, portrait, picture, and persona under applicable laws following Barneyu Rosset's death on February 12, 2012.

175.    On August 19, 2025, Assignor irrevocably assigned these rights to Plaintiff for valuable consideration, including under Va. Code § 8.01-40 and RCW 63.60.010 et seq., vesting Plaintiff with all title, interest, and enforcement authority.

176.    On or about August 19, 2025, Fantagraphics published and distributed the book "Evergreen Review: Dispatches from the Literary Underground: Covers & Essays 1957-1973."

177.    Fantagraphics, Thomas, Oakes, and ERI, by and through ERI's Board Member Defendants, have engaged in the unauthorized use of Barney Rosset's name, portrait, and picture in the Book for advertising or trade purposes, including in descriptions, essays, and promotions to exploit his legacy for commercial gain, without consent, causing injury.

178.    Defendantss unauthorized uses include: (a) referencing Rosset as editor in promotional materials; (b) including his name and potential images in the Book's content; and (c) leveraging his identity to market the compilation of Evergreen Review materials.

179.    Such uses dilute Rosset's legacy, cause economic harm, and infringe Plaintiff's assigned rights, with damages exceeding $500,000.

180.    Under New York's choice-of-law rules, which apply interest analysis to tort and property claims, Virginia law (Va. Code § 8.01-40) governs the claim against all Defendants

because: (a) Plaintiff, the assignee and injured party, is domiciled in Virginia; (b) the assignment vests rights there; (c) the injury (dilution and economic loss) is felt in Virginia; and (d) Virginia has a strong interest in protecting its residents' property rights, outweighing other states' interests

181.    Alternatively, Washington law (RCW 63.60.010 et seq.) applies to the claim against Fantagraphics and others because: (a) Fantagraphics is domiciled in Washington and published the Book there; (b) infringing acts originated in Washington; and (c) Washington has a paramount interest in regulating commercial exploitation by its domiciliaries.

182.    Furthermore, the ERI Board Member Defendants, as directors of ERI, have breached their fiduciary duties to the successors in interest of the original founding donor (Barney Rosset), including Plaintiff, by failing to enforce the restrictions upon the donation. Specifically, the ERI Board Member Defendants have granted or permitted use of Evergreen Trademark and, in violation of the donation's restrictions that limit use to preservation and prohibit certain uses creation without approval. This breach has caused harm to Plaintiff, including dilution of the Mark, unauthorized use of the Copyrights, and damage to the legacy of the Evergreen Review.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment Pursuant to CPLR § 3001 – Trademark Ownership and Infringement)

183.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1 through 182 of this Amended and Supplemental Complaint as if fully set forth herein

184.    Pursuant to CPLR § 3001, Plaintiff seeks this Court's declaration concerning the parties' rights, duties, and legal relations with respect to the Mark.

185.    There exists a bona fide, actual, and justiciable controversy between Plaintiff and Defendants concerning: (a) Grove/Atlantic's abandonment of the Mark through prolonged nonuse with intent not to resume, as evidenced by the cancellation of federal registration No. 774,562 and exceeding the three-year presumption under 15 U.S.C. § 1127; (b) Plaintiff's status as successor-in-interest to Barney Rosset's senior and continuous use of the Mark in New York, establishing common-law ownership; and (c) Defendants' infringement of the Mark under New York common law through unfair competition and passing off.

186.    The issuance of declaratory relief will terminate the controversy and provide certainty regarding the parties' rights and obligations.

187.    By reason of the foregoing, Plaintiff is entitled to a declaratory judgment establishing that: (a) Grove/Atlantic abandoned the Mark through nonuse exceeding the three-year presumption under 15 U.S.C. § 1127, with no intent to resume, as shown by cessation of publication after 1984, failure to maintain the registration (canceled circa 1995), and lack of exploitation or policing; (b) Plaintiff, as successor-in-interest by assignment from the widow of Barney Rosset, is the current owner of the common-law Mark "Evergreen Review" in New York based on senior and continuous use since at least 1997; and (c) Defendants are infringing Plaintiff's common-law trademark rights in the Mark under New York law, including through unfair competition and passing off.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment Pursuant to CPLR § 3001 – Non-Exclusive Implied License and Equitable Estoppel for Copyrights)

188.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1 through 187 of this Amended and Supplemental Complaint as if fully set forth herein

189.     Pursuant to CPLR § 3001, Plaintiff seeks this Court's declaration concerning the parties' rights, duties, and legal relations with respect to the Copyrights.

190.     There exists a bona fide, actual, and justiciable controversy between Plaintiff and Defendants concerning: (a) the existence and scope of a non-exclusive implied license from Entrekin and Grove/Atlantic to Barney Rosset circa 1997 for the Copyrights in the print versions of Evergreen Review issues 1 through 98, arising from Grove/Atlantic's abandonment, acquiescence, and the parties' course of dealing; (b) equitable estoppel barring Grove/Atlantic or Defendants from denying such rights due to Rosset's detrimental reliance on their conduct post-1997; and (c) Plaintiff's status as successor-in-interest entitled to use, sublicense, and donate the Copyrights.

191.     The issuance of declaratory relief will terminate the controversy and provide certainty regarding the parties' rights and obligations.

192.     By reason of the foregoing, Plaintiff is entitled to a declaratory judgment establishing that: (a) A non-exclusive implied license exists from Entrekin and Grove/Atlantic to Barney Rosset circa 1997 for the Copyrights in the print versions of Evergreen Review issues 1 through 98, based on Grove/Atlantic's abandonment (e.g., no post-1984 exploitation, lapsed renewals) and acquiescence to Rosset's continuous use without objection, demonstrating a meeting of the minds under Second Circuit law; (b) equitable estoppel bars Grove/Atlantic or Defendants from asserting rights against such use due to Rosset's detrimental reliance in reviving and exploiting the work; and (c) Plaintiff, as successor-in-interest by assignment from the widow of Barney Rosset, holds these non-exclusive rights, permitting use, sublicensing, and donation thereof.

**THIRD CAUSE OF ACTION**

41

**(Breach of Fiduciary Duty Against the ERI ERI Board Member Defendants)**

193.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1 through 192 of this Amended and Supplemental Complaint as if fully set forth herein

194.    As directors of ERI, a non-profit corporation, the ERI Board Member Defendants owe fiduciary duties of care, loyalty, and obedience to ERI and to the successors in interest of donors who provided restricted donations, including Plaintiff as successor to Barney Rosset.

195.    The donation of rights to ERI was subject to specific restrictions, including that ERI could not sublicense the rights for the creation of new online issues or content without prior approval, to preserve the historical integrity and legacy of the Evergreen Review.

196.    The ERI Board Member Defendants breached these fiduciary duties by failing to enforce the restrictions and by granting or permitting a sublicense to create new online issues using [www.evergreenreview.com](www.evergreenreview.com), in violation of the donation terms.

197.    As a direct and proximate result of these breaches, Plaintiff has suffered damages, including but not limited to dilution of the Mark, unauthorized exploitation of the Copyrights, and harm to the legacy of Barney Rosset, in an amount to be determined at trial but not less than $500,000.

198.    The ERI Board Member Defendants' actions were willful, reckless, or in bad faith, warranting punitive damages.

**FOURTH CAUSE OF ACTION**

**(Standing to Enforce Charitable Gift Restrictions)**

199.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1 through 198 of this Amended and Supplemental Complaint as if fully set forth herein.

42

200.     Pursuant to New York Common Law on standing (*Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, 281 A.D.2d 127 (N.Y. App. Div. 2001)); *Israel Academy of Sciences and Humanities v. American Foundation for Basic Research in Israel, Inc.*, 2023 WL 5509309 (S.D.N.Y. Aug. 25, 2023), aff'd 2024 WL 3289482 (2d Cir. July 3, 2024); *Reed Foundation, Inc. v. Franklin D. Roosevelt Four Freedoms Park, LLC*, 108 A.D.3d 1 (1st Dept 2013); *cf. Lucker v. Bayside Cemetery*, 114 A.D.3d 162 (1st Dept 2013)), Plaintiff, as successor-in-interest to the founding donor Barney Rosset with a special interest in enforcement of gift restrictions, has standing to enforce the charitable gift restrictions.

201.     Barney Rosset was the founder and controlling shareholder of the for-profit entity Grove Press and its wholly owned for profit affiliate Evergreen Review, Inc. from approximately 1949 to 1985. The USPTO registered trademark "Evergreen" (1964) and "Evergreen Review" were transferred to Grove/Atlantic in 1993. On or about 1997, Barney Rosset became the owner of the Evergreen and Evergreen Review trademarks and the owner of the copyrights in and to Issues 1-98 of the print series Evergreen Review by operation of law through an implied license from Grove/Atlantic and its controlling shareholder Morgan Entrekin. and his wife, Astrid Myers Rosset were owners of the copyrights in the copyrights in the Evergreen Review print publications and the trademark Evergreen Review by implied license at all times material to the pending action against ERI, Oakes, and OR Books.

202.     The articles of organization forming a not-for-profit foundation "Evergreen Review, Inc." ("ERI") filed by Barney Rosset and his wife Astrid Myers Rosset in 1997 gifted the limited non-exclusive right to use of the domain name EvergreenReview.com, the trademark "Evergreen" and "Evergreen Review," and certain copyrights in and to the print series title of Evergreen Review, Issues 1-98, for the express purpose stated in the documents filed with New

43

York Charities Bureau and subject to the gift restrictions, which reserved ownership of the trademarks and copyrights to Barney Rosset, which trademarks and copyrights became the property of the Estate of Barney Rosset, whose appointed executor was Astrid Myers Rosset, and which, pursuant to the Will, naming Astrid Myers Rosset as the sole beneficiary of the Estate, subsequently became the property of Astrid Myers Rosset. Astrid Myers Rosset transferred and assigned in 2021, all right, title, and interest, including goodwill in the trademarks, and copyrights in Issues 1-98 of the Evergreen Review to an New York limited liability company, RFLH formed by Barney Rosset's daughter, Chantal E. Hyde (née Rosset).

203.    RFLH LLC is the successor-in-interest to the widow of Barney Rosset and executor of the Estate of Barney Rosset. Through approximately 2019, Astrid Myers Rosset was an officer and director of ERI, and oversaw, as donor, her special, personal interest in the enforcement of the gift restriction to ERI until Defendant Oakes engineered her removal from ERI's board. RFLH managed by Barney Rosset's daughter, has a special, personal interest in the enforcement of the gift restriction.

204.    Plaintiff is entitled to declaratory relief confirming its standing to enforce the charitable gift restrictions as successor-in-interest to the founding donor with special interest in enforcement of gift restrictions.

## FIFTH CAUSE OF ACTION

**(Declaratory Judgment Pursuant to CPLR § 3001 – Ultra Vires Acts, Breach of Fiduciary Duty, and Invalidity of Trademark Application and Publishing Agreement)**

205.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 204 above as if fully set forth herein.

44

206.    Oakes, as President and Publisher of ERI, a New York not-for-profit corporation, acted ultra vires and in breach of his fiduciary duties under N-PCL §§ 202, 717, and 720 by misrepresenting ERI's legal name as "The Evergreen Review" (an unregistered assumed name) instead of "Evergreen Review, Inc." in: (i) a 2020 trademark application filed with the United States Patent and Trademark Office (USPTO) for "Evergreen Review" (Reg. No. 6586763); and (ii) an April 2019 publishing agreement with Fantagraphics Books, Inc. for exploitation of Evergreen Review content.

207.    Oakes failed to file a certificate of assumed name under GBL § 130 for "The Evergreen Review," rendering such use unlawful and any transactions thereunder unenforceable or voidable.

208.    Oakes undertook these actions without informing or obtaining approval from the ERI Board of Directors, in violation of ERI's By-Laws (e.g., Art. II § 1 requiring board management; Art. III § 6(a) mandating board oversight of corporate affairs) and N-PCL § 202(a)(2) limiting corporate powers to authorized acts.

209.    These misrepresentations constitute fraud on the USPTO (15 U.S.C. § 1115) and breach of fiduciary duty, causing harm to RFLH as successor-in-interest to the restricted donor rights in the Evergreen Review intellectual property.

210.    An actual controversy exists regarding the validity of the 2020 trademark and 2019 agreement, as Oakes/ERI continue to assert rights thereunder, while RFLH maintains they are invalid due to ultra vires conduct and non-compliance with GBL § 130.

211.    Pursuant to CPLR § 3001, Plaintiff is entitled to a declaratory judgment declaring: (i) Oakes' actions were ultra vires and in breach of fiduciary duty; (ii) the 2020 USPTO

45

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 47 of 59

trademark application/registration is invalid and subject to cancellation; (iii) the 2019

Fantagraphics agreement is void or rescindable; and (iv) all rights thereunder revert to RFLH.

### SIXTH CAUSE OF ACTION

### (Breach of Fiduciary Duty/Faithless Servant Doctrine)

212.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1

through 211 of this Amended and Supplemental Complaint as if fully set forth herein.

213.    Pursuant to N-PCL, Faithless Servant Doctrine, New York Common Law (*see AT

Last Sportwear, Inc. v. Byron*, 91 AD3d 551 (1st Dept 2024) (equitable doctrine that permits

recovery of faithless servant damages, requiring forfeiture of compensation and disgorging of ill-

gotten profits)), relief is sought against Oakes and ERI, and ERI Board Member Defendants for

disgorgement of all amounts received from the Fantagraphics book contract and all revenues

obtained from use of the Mark, misappropriation of corporate opportunities of RFLH's

ownership of the common law Mark in NY (Evergreen Review) and copyright ownership of

Evergreen Review printed magazines.

### SEVENTH CAUSE OF ACTION

### (Related Party Transactions (N-PCL § 715))

214.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1

through 213 of this Amended and Supplemental Complaint as if fully set forth herein.

215.    Pursuant to N-PCL 715 Related Party Transactions (a) No corporation shall enter

into any related party transaction unless the transaction is determined by the board, or an

authorized committee thereof, to be fair, reasonable and in the corporation's best interest at the

time of such determination.

46

216.    Oakes and Dale Peck are insiders. Dale Peck gets paid off the books. The loan to Evergreen from Oakes, not properly documented, voted on, and no evidence of repayment amount.

217.    ERI and ERI's Board Member Defendants entered or permitted related-party transactions (including loans and compensated arrangements) involving insiders without meeting § 715's requirements that the board determine the transaction to be fair, reasonable, and in the corporation's best interest, with appropriate disclosure, recusal, and documentation. Plaintiff seeks declaratory and equitable relief, including voiding/ratification review and governance remedies.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment – Termination of Letter Agreement for Rosset Autobiography)

218.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 217 above as if fully set forth herein.

219.    On or about February 9, 2015, Astrid Myers Rosset, as executrix of the Estate of Barney Rosset and owner/Proprietor of certain intellectual property rights in the Evergreen Review (including copyrights in print issues 1-98 and associated trademarks), entered into a Letter of Agreement (the "Letter Agreement") with Defendant OR Books LLC "respective the work tentatively entitled: "SUBJECT IS LEFT-HANDED: an Autobiography by Barney Rosset, Jr.".  Pursuant to the Letter Agreement, Astrid Myers Rosset granted OR Books limited rights to publish, distribute, and exploit certain facsimile editions or other derivative works based on the historical Evergreen Review content, in exchange for, inter alia, periodic royalty payments and reporting obligations.

47

220.    OR Books published the hardcover (in partnership with Counterpoint Press) and softcover versions of the works entitled "Rosset: My Life in Publishing and How I Fought Censorship" in 2016 ("Rosset Autobiography").  Both hardcover and softcover versions of the Rosset Autobiography were copyrighted "© 2016 Estate of Barney Rosset."

221.    The Letter Agreement was signed by John Oakes as "co-publisher" of OR Books.

222.    The Letter Agreement required OR Books to provide royalty statements and any due payments to Astrid Myers Rosset on a semi-annual basis, or upon written request, within 30 days of receipt of such request, even if no royalties were due for the reporting period.

223.    On February 23, 2021 Astrid Myers Rosset, who had entrusted editing and completion of the autobiography to Defendant Oakes in 2015, sent an email to Robinson at  OR Books (info@orbooks.com) stating, in relevant part as follows: "in regard to royalty reports for the Barney Rosset Autobiogrpahy published by OR books – paperback – and hardcover by Counterpoint/Or Books.  I understand that there is an agreement with Algonquin Books to receive any payments that may be due.  I would like to have an accounting for each edition for The Estate of Barney Rosset as stated in our agreement dated February 9, 2015.  I have never received a report in five years.  I would appreciate a copy of any reports sent to Algonquin and/or directly to me."

224.    On March 9, 2021, Robinson replied by email: "Hi Astrid Apologies for being so slow responding.  We will get a statement to you by the end of this month.  Best Colin."

225.    On March 31, 2021, Astrid Myers Rosset emailed Robinson:  "Hi Colin, Just a reminder about getting a royalty report for Barney's Autobirography – paperback and hardcover.  If you sent one to Algonquin a copy of that would be Ok.  I have never received a report in 5 years.  I would like to know if there have been any transactions for either book."

226.    On April 2, 2021, Robinson replied by email:  "Hi Astrid, Please find attached a statement that we are sending to Algonquin for sales of Barney's autobiography to the end of 2020.  Best Colin."  Robinson's email attached an OR Books Royalty statement dated 2/23/2021.

227.    Paragraph 12 of the Letter Agreement "[t]he Proprietor may terminate this Agreement if the Publisher fails to issue statements and payments within thirty days' written notice from the Proprietor of the Publisher's failure to do so."

228.    After receipt of her written notification to Robinson on February 23, 2021, OR Books delivered a Royalty statement dated 2/23/2021 for "Total sales as of 12/31/2020," but failed to deliver to Astrid Myers Rosset as required pursuant to Paragraph 12 of the Letter Agreement the following O/R Books Royalty statements: "Royalty statement date 9/15/17" (EVERGREEN-0000325); "Royalty Statement date 5/1/19" (EVERGREEN-0000324); "Royalty Statement date 1/14/20" (EVERGREEN-0000323); "Royalty Statement  . . . as of 12/31/2021" (EVERGREEN-000327).  The foregoing Royalty Statements were produced to Plaintiff in response to its requests for the production of documents from Oakes and OR Books on or about September 5, 2025.

229.    OR Books failed to provide to Astrid Myers Rosset the Royalty Statements dated 2/23/2021 9/15/17, 5/1/19, 1/14//20, and 12/31/2021 "within thirty days' written notice from the Proprietor of the Publisher's failure to do so."  Accordingly, the Letter Agreement terminated automatically as a matter of law thirty (30) days from the date of her written request to Robinson, i.e., no later than March 25, 2021.

230.    Astrid Myers Rosset assigned all her right, title, and interest in the Letter Agreement, including the intellectual property rights thereunder and any claims for breach or termination, to RFLH on or about September 22, 2022.

231.    RFLH notified Oakes and Robinson that the Letter Agreement was terminated during 2023 and 2024 and demanded that OR Books and Robinson revert the Autobiography and all related rights to RFLH.

232.    RFLH requested in writing, including the demand letters to Oakes and in the Complaint filed on December 28, 2024 (NYSCEF Doc. No. 11) that Oakes, OR Books, and Robinson provide all royalty reports and payments to RFLH during 2023, 2024, and 2025.

233.    OR Books, Oakes, and Robinson failed to deliver to RFLH Royalty Statements as of 12/31/2022 (EVERGREEN-0000328) and as of 12/31/2023 (EVERGREEN-0000329) until on or about September 5, 2025, and RFLH has to date received no Royalty statements from OR Books after 12/31/2023.

234.    RFLH has not and did not waive or or otherwise prejudice the termination rights of its predecessor in interest, Astrid Myers Rosset, which such termination of the Letter Agreement was and is binding upon OR Books.

235.    RFLH also, without waiver and without prejudice to its rights as assignee of rights in and to the Rosset Autobiography and any claims or causes or action arising therefrom, including without limitation the Letter Agreement, has its own claim for termination as a matter of law pursuant to Paragraph 12 of the Letter Agreement.

236.    OR Books failure to provide RFLH with  within thirty days' of its written notices to OR Books during 2023 and 2024 provides additional grounds for termination of the Letter Agreement automatically as a matter of law thirty (30) days from the date of the from the Proprietor of the Publisher's failure to do so."  Accordingly, the Letter Agreement terminated automatically as a matter of law thirty (30) days from the date its Complaint filed on December 28, 2024, i.e. no later than January 25, 2025.

50

237.    An actual controversy exists between Plaintiff and OR Books regarding the status of the Letter Agreement and the publication rights granted therein. OR Books disputes the validity of the termination and continues to assert rights under the Letter Agreement, while RFLH maintains that the Letter Agreement has been properly terminated due to OR Books' material breaches of Paragraph 12 of the Letter Agreement.

238.    Pursuant to CPLR § 3001, Plaintiff is entitled to a declaratory judgment declaring that: (i) OR Books materially breached the Letter Agreement by failing to provide royalty reports and payments within 30 days of Astrid Myers Rosset's written request; (ii) without waiver and without prejudice, to the extent not previously terminated, OR Books materially breached the Letter Agreement by failing to provide royalty reports and payments within 30 days of RFLH's written requests; (iii) the Letter Agreement is terminated,  (iv) all publication rights and subsidiary granted to OR Books have reverted to Plaintiff as of the earliest date of termination; (v) OR Books has no further rights to publish, distribute, or exploit the Rosset Autobiography and any content therein or any derivative works thereto, and OR Books has not further rights to exploit any or all of the subsidiary rights in the Letter Agreement from the earliest date of termination; and (vi) OR Books, Robinson, and Oakes must immediately return to RFLH any and all materials provided to them for publication of the Rosset Autobiography and provide an accounting to RFLH and  that OR Books, Robinson, and Oakes must provide all books, records, and all other relevant information required to conduct a full audit of  Rosset Autobiogrpahy by RFLH.

## NINTH CAUSE OF ACTION

### (Equitable Accounting)

51

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 53 of 59

239.     Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1 through 238 of this Amended and Supplemental Complaint as if fully set forth herein.

240.     Defendant ERI is a New York Not-For-Profit Corporation and is governed by the New York Not For-Profit Corporation Law (N-PCL).

241.     The relationship between Defendant Oakes, Defendant ERI, the ERI Board Member Defendants and RFLH is fiduciary and confidential in nature and pursuant to S. 717 of the N-PCL, Oakes, ERI, and the ERI Board Member Defendants owe fiduciary duties, including the duties of loyalty and due care to RFLH.

242.     In reliance on the fiduciary and confidential nature of these relationships, RFLH and its predecessors-in-interest entrusted charitable donations to Oakes, ERI, and ERI Board Member Defendants, and Oakes, ERI, and the ERI Board Member Defendants have a legal obligation to account to RFLH for the payments, proceeds and all other consideration and assets received by them and for the use and handling of such payments, proceeds, consideration, and assets.

243.     In addition to the aforementioned legal obligations, ERI, upon information and belief compensated certain ERI Board Member Defendants, including but limited to ERI Director Dale Peck, without board approval or disclosing the compensation on ERI's Form 990.

244.     Also, Defendant Oakes appears to have made a loan to ERI as disclosed on ERI's Form 990 without the proper board approval, resolution and fair and reasonable payback terms. The loan was no longer disclosed on a subsequent Form 990 filed by ERI.

245.     In addition to the Oakes loan, ERI's Form 990 discloses an SBA loan that, upon information and belief, was not properly approved by the ERI Board Member Defendants and

the proceeds were used to pay for transactions involving directors, officers, or key persons of ERI, including certain ERI Board Defendants.

246.    ERI's Form 990 does not detail the ownership of any Intellectual property and its value, nor does it list any other tangible assets owned by ERI as required by the Internal Revenue Code.

247.    RFLH demanded an accounting from ERI and the ERI Board Member Defendants on August 5, 2024.

248.    ERI and the ERI Board Member Defendants refused RFLH's accounting demands.

249.    The financial information and records sought by RFLH are necessary to determine ERI's and the ERI Board Member Defendants' use and handling of the donations and charitable gifts entrusted to OAKES, ERI, and the ERI Board Member Defendants.

250.    Defendant ERI and the ERI Board Member Defendants have an ongoing duty to RFLH to account for all compensation and benefit, and financial remuneration received from transactions and services undertaken by ERI, Oakes, the ERI Board Member Defendants, OR BOOKS, and Robinson arising during the relevant time period.

251.    The relationship between Oakes, ERI, and the ERI Board Member Defendants to RFLH is fiduciary and confidential in nature and Oakes, ERI, and the ERI Board Member Defendants owe fiduciary duties, including the duties of loyalty and due care to RHLH.

252.    In reliance on the fiduciary and confidential nature of these relationships, RFLH and its predecessors-in-interest entrusted charitable donations and charitable gifts, and related assets or rights to Oakes, ERI, and the ERI Board Member Defendants.

53

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 55 of 59

253.    Defendants Oakes, ERI, and the ERI Board Member Defendants have a legal obligation to account to RFLH for the payments, proceeds and all other consideration and assets received by them and for the use and handling of such payments, proceeds, consideration, and assets.

254.    Upon information and belief, Defendant ERI, at the direction of Oakes, has willfully refused to provide RFLH and its member and manager, Chantal Rosset, with access to information set forth in its Demand in order to conceal various related-party transactions, preferential disbursements, invalid, void, voidable, or otherwise improper transactions with the predecessors-in-interest of RFLH, the perpetuation of such invalid, void, voidable, or otherwise improper transactions as to RFLH that have impaired and continue to impair the rights and financial interests of RFLH, and other acts of wrongdoing.

255.    RFLH does not have an adequate remedy at law.

256.    As a result of defendant's wrongful refusal to provide RFLH with access to the information and/or to otherwise account to RFLH, RFLH is entitled to an equitable accounting

## TENTH CAUSE OF ACTION

### (Unjust Enrichment)

257.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs through 1 through 256 of this Amended and Supplemental Complaint as if fully set forth herein.

258.    Defendants have been unjustly enrich by retaining the benefits of of their unauthorized use of  Barney Rosset's identity and the charitable donations, charitable gifts, and all other property and intellectual property retained and owned by RFLH.

54

INDEX NO. 655197/2024
RECEIVED NYSCEF: 11/06/2025

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 56 of 59

259.    Defendants ERI, Oakes, the ERI Board Member Defendants, OR Books, Robinson, Fantagraphic Books, Groth, Emmert, and Thomas  were enriched at RFLH's expense, and equity and good conscience require restitution/disgorgement of all profits derived from such unlawful expoitation.

## ELEVENTH CAUSE OF ACTION

### (Violation of Post-Mortem Right of Publicity
### Under Virginia Law (Va. Code § 8.01-40))

260.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs through 1 through 259 of this Amended and Supplemental Complaint as if fully set forth herein.

261.    Pursuant to Va. Code § 8.01-40, the unauthorized use of a decedent's name, portrait, or picture for advertising or trade purposes without consent of the surviving consort (or assignee) entitles the holder to injunctive relief and damages for 20 years post-death.

262.    Defendants used Rosset's identity in the Book and promotions without consent, causing injury including legacy dilution and economic harm.

263.    The violation was knowing, entitling Plaintiff to punitive damages.

264.    Plaintiff has suffered damages exceeding $500,000.

## TWELFTH CAUSE OF ACTION

### Violation of Post-Mortem Right of Publicity
### Under Washington Law (RCW 63.60.010 et seq.))

265.    Plaintiff incorporates by reference and realleges the allegations of Paragraphs 1 through 264 of this Amended and Supplemental Complaint as if fully set forth herein..

266.    Pursuant to RCW 63.60.010 et seq., a personality's descendible property right in name, likeness, etc., survives for 75 years and is enforceable by assignees against unauthorized commercial uses.

55

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 57 of 59

267.    Defendants infringed this right through the Book's exploitation of Rosset's identity without consent, causing similar injuries.

268.    The infringement was knowing, entitling Plaintiff to profits, exemplary damages, fees, and costs.

269.    Plaintiff has suffered damages exceeding $500,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.    Enter a judgment declaring that: (i) Plaintiff is the successor-in-interest, owner, and senior prior user of the Mark in New York post-cancellation of Nominal Defendant Grove/Atlantic's federal trademark; (iii) Defendants are infringing the Mark under New York common law; (iv) an implied non-exclusive license was granted by Nominal Defendants to Barney Rosset as of 1997 for the Copyrights in the print versions of Evergreen Review issues 1 through 98; (v) Plaintiff is the successor-in-interest and owner by implied license of the Copyrights; (vi) Plaintiff has standing to enforce charitable gift restrictions as successor-in-interest to founding donor with special interest in enforcement of gift restrictions; (vii) invalidation of Evergreen Review trademark registration filed under assumed name by Defendant Oakes; (viii) invalidation of contract entered into between  Oakes and  Fantagraphics in April 2019 and between  Oakes and Thomas;

B.    Enter judgment against the ERI ERI Board Member Defendants for breach of fiduciary duty, awarding Plaintiff compensatory damages in an amount to be determined at trial, but not less than $500,000, plus punitive damages;

Case 1:25-cv-09398-LAP     Document 9-5     Filed 11/18/25     Page 58 of 59

C.      Grant injunctive relief enjoining the ERI ERI Board Member Defendants from further breaches and requiring enforcement of the donation restrictions, including revocation of any unauthorized sublicenses;

D.      Award Plaintiff costs and disbursements incurred in this action;

E.      Grant equitable accounting against Defendant ERI;

F.      Grant relief for unjust enrichment against Defendants ERI, Oakes, the ERI Board Member Defendants, OR Books, Robinson, Fantagraphic, Groth, Emmert, and Thomas;

G.      Grant disgorgement under faithless servant doctrine against Oakes, ERI, and the ERI Board Member Defendantsfor all amounts from Fantagraphics contract and revenues from trademark use;

H.      Grant relief for related party transactions including the loan;

I.      Enter a permanent injunction restraining Defendants from using Barney Rosset's nae, protrait, or picture in the Book or related materials under both Virginia and Washington law;

J.      Award compensatory damages, including actual damages and profits in an amount to be proven at trial, but not less than $500,000 for the violations of Va. Code § 8.01-40 and RCW 63.60.010 et seq.

K.      Award punitive/examplary damages for knowing and willful violations Va. Code § 8.01-40 and RCW 63.60.010 et seq.

L.      Award attorneys' fees, costs, and such other relief as the Court deems just and proper.

Case 1:25-cv-09398-LAP    Document 9-5    Filed 11/18/25    Page 59 of 59

Dated: New York, New York
November 4, 2025

SMALLMAN + SNYDER LAW GROUP
|| SMALLMAN LAW PLLC

By: _____/s/_____

David Brian Smallman, Esq.
Attorney for Plaintiff Rosset Family
Legacy Holdings LLC
43 West 43rd Street, Suite 242
New York, NY 10036-7424
Tel: (917) 414-0182

58