**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ~~ROSSET FAMILY LEGACY HOLDINGS LLC,~~<br><br>~~Plaintiff,~~<br><br>~~-against-~~<br><br>~~JOHN G. H. OAKES, EVERGREEN REVIEW, INC., a New York Domestic Not-For-Profit Corporation, JOHN TROUBH, PAUL CHAN, CHARLES PALELLA, PATRICIA L. IRVIN, DALE PECK, VYJAYANTHI RAO, PAMELA ROSENTHAL, OR BOOKS LLC, a New York Limited Liability Company, COLIN ROBINSON, FANTAGRAPHICS BOOKS, INC., a Washington Corporation, GARY GROTH, LYNN EMMERT, and PAT THOMAS,~~<br><br>~~Defendants,~~<br>~~and~~<br><br>~~GROVE/ATLANTIC, INC. and MORGAN ENTREKIN,~~<br><br>~~Nominal Defendants.~~ | Case No. 1:25-cv-09398-LAP<br><br>Hon. Loretta A. Preska |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REMAND TO STATE COURT AND FOR COSTS AND EXPENSES**

Dated: December 12, 2025

David Brian Smallman
Smallman + Snyder Law Group ||
Smallman Law PLLC
43 West 43rd Street, Suite 242
New York, NY 10036
Telephone: (917) 414-0182
Facsimile: (212) 202-5200
DBS@smallmanlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........ 1

BACKGROUND ........ 3

A. The Complaint and the Amended Complaint ........ 3

B. Procedural History. ........ 6

LEGAL STANDARD ........ 8

ARGUMENT ........ 8

I. THE AMENDED AND SUPPLEMENTAL COMPLAINT ASSERTS NO CLAIM CREATED BY FEDERAL LAW ........ 8

A. *Royal Canin* and *AMTAX* Confirm That Plaintiffs May Confine Their Claims to State Law ........ 9

B. No Embedded Federal Question Satisfies *Grable*/*Gunn* ........ 10

II. THE COPYRIGHT ACT DOES NOT COMPLETELY PREEMPT PLAINTIFF'S CLAIMS, NOR DO THEY "ARISE UNDER" THE ACT ........ 10

A. Fiduciary, Charitable-Gift, and Governance Claims Have Extra Elements ........ 11

B. Unjust Enrichment, Constructive Trust, Accounting, and Faithless-Servant Claims Are Equitable Remedies for Fiduciary Breach, Not Surrogate Copyright Claims ........ 12

C. Declaratory Relief Does Not "Arise Under" the Copyright Act ........ 13

D. Nonexclusive Licenses and § 204 Are Resolved Under State Law ........ 14

E. Section 1454 Does Not Create Jurisdiction Where None Exists ........ 15

F. The Holistic Approach Under *In re Jackson* Confirms No Preemption of RFLH's State Claims ........ 15

.

**Page(s)**

III. PLAINTIFF'S NEW YORK TRADEMARK, UNFAIR-COMPETITION, AND G.B.L. CLAIMS ARE PURELY STATE-LAW AND NOT PREEMPTED BY THE LANHAM ACT .......... 17

A. Plaintiff Seeks Only State-Law Declaratory and Equitable Relief .......... 17

B. *RBCI* and *Volpone* Are Factually Distinguishable .......... 18

IV. PLAINTIFF'S N-PCL FIDUCIARY AND GOVERNANCE CLAIMS PRESENT NOVEL AND PREDOMINANT STATE-LAW ISSUES .......... 19

V. EVEN IF ANY FEDERAL ISSUE EXISTED, THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION UNDER § 1367(c) .......... 20

VI. THE REMOVAL WAS PROCEDURALLY DEFECTIVE AND UNTIMELY UNDER 28 U.S.C. § 1446 .......... 21

A. Defendants Failed to Attach All "Process, Pleadings, and Orders" Required by § 1446(a) .......... ~~20~~ 21

B. Removal Was Untimely Under § 1446(b) .......... 22

VII. PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER § 1447(c) .......... 23

CONCLUSION .......... 24

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ABKO Music, Inc. v. Sagan*,
50 F4th 309, 320 (2d Cir. 2022)........................................ 14

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
136 F.4th 32 (2d Cir. 2025)........................................9, 10

~~*Baker v. Weber*,~~*Barone v. Bausch & Lomb, Inc.*,
372 F. Supp. 3d 141 (W~~No. 19 Civ. 1093 (JPC),~~
~~2021 WL 4480998 (S~~.D.N.Y. ~~Sept. 30, 2021)~~
~~........................................ 22~~
2019)........................................ 9

*Bastidas v. Garcia*,
2024 N.Y. Slip Op. 50073(U) (Sup. Ct. Queens ~~Cnty~~Co. Jan. 23, 2024)
........................................~~28~~20

*Bourne v. Walt Disney Co.*,
68 F.3d 621 (2d Cir. 1995)........................................ ~~12, 13~~14

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004)........................................ 11, ~~12~~13

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)........................................ 7, 8~~, 9~~

~~*City of New York v. Exxon Mobil Corp.*,~~
~~No. 24-1568-cv (2d Cir. Oct. 3, 2025)........................................11~~

.

*City of New York v. Exxon Mobil Corp.*,
154 F.4th 36 (2d Cir. 2025)........................................23

*City of New York by and through FDNY v. Henriquez*,
768 F. Supp 3d 388 (E.D.N.Y. 2025) ) ............................................................. 11

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007)............................................................................14

*Forest Park Pictures v. Universal Television Network, Inc.*,
683 F.3d 424 (2d Cir. 2012)..........................................................................16

*Graham v. James*,
144 F.3d 229 (2d Cir. 1998)..................................................................... 11, 14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ................................................................................ 9, 10, 17

*Gunn v. Minton*,
568 U.S. 251 (2013) .................................................................................. 9, 10, 17

*In re Jackson*,
972 F.3d 25 (2d Cir. 2020) .................................................................... ~~1, 5~~11, 15, 16

*Israeli Academy of Sciences & Humanities v. Am. Found. for Basic Research in Israel, Inc.*,
No. 03-9055, 2004 WL 3289482 (2d Cir. July 3, 2004) ........................................... 6

*ITC Ltd. v. Punchgini, Inc.*,
9 N.Y.3d 467 (2007) .................................................................................. 18

*Lucker v. Bayside Cemetery*,
114 A.D.3d 162 (1st Dep't 2013) .................................................................... 5

*Lupo v. Human Affairs Int'l, Inc.*,
28 F.3d 269 (2d Cir. 1994) .................................................................................. ~~8~~7

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) .................................................................................. ~~23, 24~~21, 22

*ML Genius Holdings LLC v. Google LLC*,
Not Reported in Fed Rptr., No. 20-3113, 2022 WL 710744, 2022 Copr.L.Dec. ¶ 31,963 (2d Cir. Mar. 10, 2022) .................................................................. 2, 11, 13

*NeuroRepair, Inc. v. Nath Law Grp.*,
54 F.4th 1345 (Fed. Cir. 2022) .................................................................................. ~~15~~13

~~*Perle*~~*Perles v. Drennan*,
19 Civ. 10690 (LAP), 2020 WL 468951 (S.D.N.Y. Jan. 29, 2020) ........................................ 7

*Photographic Illustrators Corp. v. Orgill, Inc.*,
953 F.3d 56, 62 (1st Cir. 2020) .................................................................................. ~~14~~13

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014) .................................................................................. 19

*Privado Marketing Group LLC v. Eleftheria Rest Corp.*,
No. 13-cv-3137 (R), 2017 WL 1167332 at *12 (S.D.N.Y Mar. 27, 2017) ..................... 11

*RBCI Holdings, Inc. v.* ~~*LifeLink Pharm., Inc*~~*Drinks Ams. Holdings, Ltd.*,
No. ~~20-CV-1858 (PKC), 2021~~07 Civ. 2877(DC), 2008 WL ~~1026218~~759339 (S.D.N.Y.

Mar. ~~17, 2021~~20, 2008) .......... 18

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) .......... ~~2,~~ 9, 21, 24

*Ryan v. Volpone Stamp Co.*,
~~309~~107 F. Supp. 2d ~~100 (E~~369 (S.D.N.Y. ~~2004)~~2000)… ................................................18

*Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*,
281 A.D.2d 127 (1st Dep't 2001)........................................................................75, 6

*SternSternklar v. Sternklar-Worenklein*,
Index No. 651270/2021, 2024 NY Slip Op 34194(U) (Sup. Ct N.Y. *State Nurses Ass'n*,Co.
164 A.D.3d 548 (1st Dep't 2018)........................................................................20
Nov. 25, 2024) (Decision + Order On Motion)..........................................................20

*Syngenta Crop Prot., Inc. v. Henson*,
537 U.S. 28 (2002).................................................................................................87

*T.B. Harms Co. v. Eliscu*,
339 F.2d 823 (2d Cir. 1964)...........................................................................2, 9, 14

**STATUTES**

15 U.S.C. § 1119.....................................................................................................18

17 U.S.C. § 106.......................................................................................................11

17 U.S.C. § 204(a)..........................................................................................12, 13, 14

17 U.S.C. § 301.................................................................................................2, 10, 17

28 U.S.C. § 1331.....................................................................................................7, 9

.

28 U.S.C. § 1338..................................................................................................97, 15

28 U.S.C. § 1367(c)........................................................................................3, 20, 21

28 U.S.C. § 1446(a)................................................................................3, 7, 2021, 22

28 U.S.C. § 1446(b)(1)..............................................................................................22
..........................................................................................................................20, 22

28 U.S.C. § 1446(b)(3)..........................................................................................2022

28 U.S.C. § 1447(c)..........................................................................................1, 8, 23, 24

28 U.S.C. § 1454 .................................................................................................................. 2, 13, 15

N.Y. Gen. Bus. Law § 130 .................................................................................................. 9, 19

N.Y. Gen. Bus. Law § 349 ........................................................................................ 9, ~~15, 16~~17, 19

N.Y. Gen. Bus. Law § 360-l ........ ~~15, 16~~9, 17, 19

N.Y. EPTL § 8-1.1 ........ 16

~~N-PCL § 201(b) ........ 5~~

N-PCL § 202 ........ ~~17~~(f) ........ 19

~~N-PCL §402. ........ 5~~

N-PCL § 513 ........ 2, ~~12~~6, 20

N-PCL § 715 ........ ~~5~~6

N-PCL § 717 ........ 2, 6, 12, ~~14~~15, 16, ~~18~~19, 20

N-PCL § 719 ........ 2, ~~18~~19, 20

N-PCL § 720 ........ ~~14~~2, 6, 16, 20

Va. Code § 8.01-40 ........ ~~5~~6

Wash. Rev. Code ch. 63.60 ........ ~~5~~6

**RULES & REGULATIONS**

N.Y. CPLR § 3001 ........ 5, ~~12, 15, 16~~13, 17

Plaintiff Rosset Family Legacy Holdings LLC ("RFLH") respectfully submits this memorandum of law, together with the Affirmation in Support of Motion to Remand and for Attorney's Fees and Costs, and the exhibits annexed thereto ("Remand Aff.), support of its motion to remand this action to the Supreme Court of the State of New York, New York County, Commercial Division, and for costs and expenses pursuant to 28 U.S.C. § 1447(c).

## **INTRODUCTION**

This case is about a New York charitable organization that has tried everything to stave off discovery in the New York State Commercial Division. Last spring, voluminous pre-answer motions were filed by Defendants Evergreen Review, Inc. ("ERI"), John G.H. Oakes, ("Oakes") and OR Books LLC ("OR Books") seeking to dismiss state court claims by asserting a frivolous argument that RFLH lacked standing as the successor to the founding donor, Barney Rosset, to enforce restrictions placed upon charitable gifts while also seeking a stay of the action expressly prohibited by the Individual Practices of the Justice assigned to the case. Months later, after failing to comply with their obligations under the Initial Disclosure rules, Defendants were ordered to comply with paper discovery deadlines, which finally revealed, among other things, long concealed ultra vires acts and other alleged misconduct in violation of New York's Not-for-Profit corporation law. With the next phase of deposition discovery ordered to begin prior to year end, RFLH filed the Amended and Supplemental Complaint ("Amended Complaint" or "Am. Compl.), which again asserted exclusively state-law claims against ERI the named board members and officers, and other Defendants.

Now, in a last-ditch effort to delay the action, the removing Defendants wrongfully seek to transform RFLH's state-law governance and donor-rights claims into federal copyright and trademark claims. The Amended Complaint asserts no claim created by the Copyright Act or

Lanham Act, and any federal statutes appears only as background to New York fiduciary and, charitable-gift duties. Defendants' anticipated defenses do not permit bootstrapping jurisdiction under the well-pleaded complaint rule. The Supreme Court's unanimous decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), confirms that when the operative complaint contains only state-law claims, a case "must be remanded to state court." Nor do Plaintiff's claims fall within the narrow category of state-law causes of action that are completely preempted under 17 U.S.C. § 301. As the Second Circuit's decisions in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), and *ML Genius Holdings LLC v. Google LLC*, Not Reported in Fed. Rptr., No. 20-3113, 2022 WL 710744, 2022 ~~Cpr~~Copr.L.Dec. ~~P~~¶ 31,963 (2d Cir. Mar. 10, 2022),

make clear, state-law claims are preempted only when they seek to vindicate rights equivalent to the exclusive rights conferred by the Copyright Act, without any "extra element" qualitatively changing the nature of the claim.

Here, Plaintiff's core claims rest on extra elements the Copyright Act does not address:

- Duties of care, loyalty, and obedience imposed on directors and officers of New York not-for-profit corporations (N-PCL §§ 717, 719–720);
- Enforceable donor-restriction obligations under N-PCL § 513 and New York charitable-trust law; and
- New York common-law trademark and unfair-competition standards for unregistered marks, limited to intrastate commerce.

Those duties and remedies exist wholly apart from copyright or the Lanham Act and are enforced daily in New York courts. See Amend. Compl. ¶¶ 1-27, 113-139. Defendants also misread 28 U.S.C. § 1454. That statute permits removal of actions "in which any party asserts a claim for relief arising under any Act of Congress relating to patents, plant variety protection, or

copyrights." It does not expand the meaning of "arising under" federal law, and its text requires remand of claims outside original or supplemental jurisdiction and permits remand of supplemental claims under 28 U.S.C. § 1367(c). Because Plaintiff's operative pleading asserts no claim "arising under" the Copyright Act, § 1454 does not apply. Moreover, Defendants' removal was procedurally defective, omitting required state-court materials under 28 U.S.C. § 1446(a), including Plaintiff's opposition affirmation—a flaw warranting remand on its own merits.

Finally, even if some embedded federal issue lurked in the background, this Court should decline supplemental jurisdiction. This case is fundamentally about the interpretation and enforcement of New York's N-PCL governance regime, charitable-gift restrictions, and common-law trademark rights. Those are precisely the kinds of "novel or complex" state-law issues, and the kind that "substantially predominate" over any federal interest, that 28 U.S.C. § 1367(c) directs federal courts to leave to state tribunals.

Because Defendants removed this case without an adequate jurisdictional basis and persisted in pressing overbroad preemption theories in the face of controlling Supreme Court and Second Circuit precedent, Plaintiff respectfully submits that remand, together with a reasonable award of attorneys' fees and costs under 28 U.S.C. § 1447(c), is warranted. As set forth below, each of Defendants' jurisdictional assertions fails under controlling authority.

## BACKGROUND

### A. The Complaint and the Amended and Supplemental Complaint

Barney Rosset, the founder of Grove Press and the *Evergreen Review*, donated certain tangible and intangible Evergreen assets, including rights relating to *Evergreen Review* issues 1–98 and archival materials, to ERI, a New York not-for-profit corporation, subject to explicit

charitable restrictions designed to preserve his editorial vision, protect his family's interests, and

ensure that use of the Evergreen legacy remained primarily educational and non-commercial (ECF No. 9-8, Exh. D-3, Remand Aff., Ex. C.).

RFLH is a Delaware limited liability company based in Virginia and is the assignee and successor-in-interest to Rosset's and his widow's property and intellectual-property interests, including rights under a Rider and related gift instruments that govern the Evergreen assets. RFLH alleges that ERI's board, led by its president Oakes, together with related publishing entities such as OR Books and Fantagraphics Books, Inc. ("Fantagraphics"), engaged in self-dealing and other misconduct that diverted control and economic benefits away from the charitable mission and away from Rosset's designated successor.

After Plaintiff's ~~year long~~yearlong efforts to reach an amicable resolution of its disputes with ERI, Oakes, and OR Books were unavailing, Plaintiff served its Summons With Notice dated September 30, 2024 upon Defendants Oakes, ERI, and OR Books (ECF No. 9-1). The original complaint, filed in December 2024, asserted five causes of action under New York law— equitable accounting, constructive trust, conversion, unjust enrichment, and aiding and abetting breach of fiduciary duty—and explicitly framed the Evergreen copyrights and trademarks as context for fiduciary and equitable breaches (ECF No. 9-2). It did not plead any federal claim.

On November 6, 2025, at the state court's direction and while motions to dismiss were pending, RFLH filed the Amended and Supplemental Complaint (ECF No 9-5). That pleading retained the original equitable and fiduciary-duty theories and added New York statutory and common-law claims, including:

- Breach of gift restrictions. Rosset granted ERI only narrow non-exclusive rights for archiving historical content and limited online revival with new material subject to donor~~-~~
~~consent—expressly barring commercial exploitation or further sublicensing without~~

approval

consent—expressly barring commercial exploitation or further sublicensing without approval—to protect the magazine's avant-garde literary legacy as required by ERI's Articles of Organization (ECF No. 9-7, Exh. D-2) and the CHAR410 Rider under N.Y. Not-for-Profit Corp. Law. (ECF 9-8, Exh. D-3). The donation conditions established at ERI's formation (e.g., Amend. Compl. ¶¶ 42-43, 105) were followed by Oakes and ERI, and evidenced by subsequent conduct, such as permissions and consents routinely sought by Oakes for external use of Evergreen Review print issue 1-98 covers under the implied non-exclusive sublicence license initially granted by Barney Rosset to ERI and continued by his widow, co-founder of ERI and donor Astrid Myers Rosset. (Amend. Compl. ¶¶ 7-27 and ECF 9-6, Ex. D-1). Oakes only ceased seeking consent and permission to use the implied non-exclusive sublicense, which was transferred to RFLH in 2021, until he succeeding in implementing his unlawful, ultra vires scheme to oust Astrid Myers Rosset – who he demeans as "a sweet little old lady" and "cute and old" – and then enter into an agreement with Fantagraphics in 2019 using an assumed name and designating himself, without a board vote as required, as "author" of a book conveying a purported "copyright" to the content and all of the covers of Evergreen Review print issue covers 1-98 in return for a payment and other consideration – apparently not reported on ERI's Form 990s (ECF No. 9-6, Exh. D-1 at 12, 15, 18, 22). As a matter of New York State law, however, the implied non-exclusive license was withdrawn, and the restricted donations remain binding and enforceable under N-PCL § 201(b) and N-PCL § 402, and Defendants are liable from breached duties owed to RFLH under the N-PCL and New York common law (Amend. Compl. ¶¶ 2-34, 89-182), not from copyrights registered to nominal defendant Grove/Atlantic;

- Declaratory judgment under CPLR § 3001 regarding common-law rights in the "Evergreen" and "Evergreen Review" marks, predating Defendants 2020 federal registration;

- Claims for breach of fiduciary duty, self-dealing, faithless servant, and ultra vires acts under N-PCL §§ 202, 513, 715, 717, and 720;
- Claims grounded in New York charitable-gift and trust principles to enforce donor restrictions;
- Post-mortem rights-of-publicity claims under Virginia Code § 8.01-40 and Washington's Personality Rights Act, RCW ch. 63.60; and
- Breach of publishing agreement by failure to provide royalty reports and payments after request in writing, termination and reversion (¶¶ 218-238).

The Amended and Supplemental Complaint does not assert copyright infringement, Lanham Act claims, or any other federal causes of action. It seeks equitable and declaratory relief under state law, including removal of faithless fiduciaries, imposition of a constructive trust, an accounting, and declarations concerning the scope of Rosset's implied non-exclusive license and RFLH's common-law trademark rights.

**B. Procedural History**

RFLH commenced this action in New York Supreme Court, New York County, by summons with notice on September 30, 2024, and filed its original complaint on December 28, 2024. Notably, with regard to the issue of untimely removal, Defendants chose not to remove the Complaint, despite numerous references in that initial pleading to copyright(s) and trademark(s), see ECF No. 9, Ex. B, Compl. ¶¶ 11, 14, 15,22,24,27,40 (copyright(s)); ¶¶ 11, 17,18, 19, 22 (trademark(s)) – essentially the same type of background references that appear in the Amended Complaint. Defendants appeared and filed voluminous pre-answer motions to dismiss premised

upon a frivolous argument that Plaintiff lacked standing[1], which remained pending for nearly a year due to, *inter alia*, Defendants efforts to stay discovery contrary to the Part 43 Rule 6(i). Plaintiff opposed the requested stay and Justice Reed denied it.

After the Amended and Supplemental Complaint was filed on November 6, 2025, and before RFLH could complete service on all additional defendants, ERI, Oakes, and OR Books filed a Notice of Removal on November 10, 2025, and then an Amended Notice of Removal on November 18, 2025. They invoked 28 U.S.C. §§ 1331 and 1338 and asserted that the case "arises under" the Copyright Act and that the Copyright Act completely preempts RFLH's unjust-enrichment and declaratory-judgment claims. They also contended that the Amended and Supplemental Complaint necessarily requires construction of the Lanham Act.

Defendants' original removal papers failed to attach all "process, pleadings, and orders" served in state court, as required by 28 U.S.C. § 1446(a). They later filed an Amended Notice of Removal and a supplemental letter, but still did not provide a complete set of state-court materials.

On November 25, 2025, Plaintiff notified Defendants and this Court that removal was both jurisdictionally and procedurally defective and requested that Defendants' deadline to respond to the Amended and Supplemental Complaint be held in abeyance pending resolution of

---

[1] While capacity to sue is not a factor in the Court's jurisdictional analysis, *Perles v. Drennan*, 19 Civ. 10690 (LAP,), 2020 WL 468951 *2 (S.D.N.Y. Jan 29, 2020), Defendants' counsel appeared unaware at the outset of the established New York common law *Smithers* doctrine, which recognizes a "special interest" exception for donors or their successors with reversionary rights in restricted charitable gifts (*Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, 281 A.D.2d 127 (1st Dept 2001).)). This mirrors an apparent lack of familiarity by ERI and its Board with the regulatory requirements of New York's Not-for-Profit Corporation Law. As discussed more fully herein, unusual circumstances are presented by a case involving an implied non-exclusive license, common law trademark seniority rights, and impermissbleimpermissible use of a similar *assumed name* by Oakes, ultra vires, in lieu of ERI's "real name."

a motion to remand. Plaintiff's letter (ECF No. 18) attached a detailed chart (ECF 18-1) rebutting each jurisdictional assertion in the Amended Notice of Removal and collecting controlling federal and state authority demonstrating that this dispute belongs in New York State Supreme Court, Commercial Division.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and "there is a presumption against removal jurisdiction." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994). The removing party bears the burden of establishing federal jurisdiction, and "all doubts are resolved against removability." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002). The existence of federal jurisdiction is determined by the operative complaint under the well-pleaded complaint rule. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," and the court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

## ARGUMENT

### I. THE AMENDED AND SUPPLEMENTAL COMPLAINT ASSERTS NO CLAIM CREATED BY FEDERAL LAW

The Amended Complaint asserts only state-law causes of action: violations of the N-PCL, breaches of fiduciary duty, unjust enrichment, constructive trust, accounting, faithless-servant, New York common-law trademark infringement and unfair competition, and

claims under N.Y. Gen. Bus. Law ("GBL") §§ 349 and 360-l. It does not plead any cause of action under the Copyright Act, the Lanham Act, or any other federal statute.

Under *Caterpillar* and *T.B. Harms*, the question is whether "the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement … or asserts a claim requiring construction of the Act, or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." 339 F.2d at 828. None of those conditions is met here.

### A. Royal Canin and AMTAX Confirm That Plaintiffs May Confine Their Claims to State Law

In *Royal Canin U.S.A., Inc. v. Wullschleger*, the Supreme Court held that when a plaintiff amends her complaint to "delete the federal-law claims that enabled removal to federal court, leaving only state-law claims behind, the federal court loses supplemental jurisdiction over the state claims, and the case must be remanded to state court." 604 U.S. at 26. The Court emphasized that the operative pleading controls and that plaintiffs are "masters of their complaints" who may eschew federal claims to stay in state court.

Similarly, in *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32 (2d Cir. 2025), the Second Circuit reversed a district court that had treated complex state-law claims involving Low-Income Housing Tax Credit compliance as "arising under" federal law. The court held that even where federal statutes provide background, state-law malpractice and fiduciary-duty claims do not fall within § 1331 absent a substantial federal issue satisfying *Grable* and *Gunn*.

*Royal Canin* and *AMTAX* foreclose Defendants' attempt to recast Plaintiff's state-law fiduciary, N-PCL, and trademark claims as federal causes of action.

. **B. No Embedded Federal Question Satisfies Grable/Gunn**

Defendants do not (and cannot) show that Plaintiff's claims satisfy the stringent test for jurisdiction under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013). Any potential federal issue is neither "necessarily raised," nor "actually disputed," nor "substantial," nor capable of resolution in federal court "without disrupting the federal–state balance approved by Congress." *Gunn*, 568 U.S. at 258.

- The N-PCL claims turn on New York corporate governance and charitable-gift law, not on the construction of federal copyright or trademark statutes.
- The unjust-enrichment and constructive trust claims turn on fiduciary breach and donor restrictions, not on whether Defendants violated § 106 or the Lanham Act.
- The common-law trademark and GBL claims are resolved under New York standards for intrastate marks, consumer deception, and dilution, even if federal registration appears in the factual background.

To the extent any federal statute is mentioned, it is background – much as federal tax code provisions were background in *AMTAX* – and does not transform these state claims into federal ones.

## II. THE COPYRIGHT ACT DOES NOT COMPLETELY PREEMPT PLAINTIFF'S CLAIMS, NOR DO THEY "ARISE UNDER" THE ACT

Defendants' primary jurisdictional theory is that Plaintiff's unjust-enrichment and declaratory claims are completely preempted by 17 U.S.C. § 301 and thus "arise under" the Copyright Act. But their theory is conclusory and breaks apart as soon as the applicable law and relevant facts are examined. The starting point is the Copyright Act, 17 U.S.C. § 301, which

preempts state-law claims <u>only if they meet a two-part test</u>: (1) the claim falls within the "subject matter of copyright," and (2) the state-law claim does not include "extra elements" that make it qualitatively different from a claim under the Copyright Act's exclusive rights, 17 U.S.C. § 106. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). As explained in *In re Jackson*, 972 F.3d 25, 33-34 (2d Cir. 2020), this analysis must be holistic, focusing on the "gravamen" of the claims as a unified whole, rather than atomizing them in isolation.

Even where those conditions are met, § 301 is ordinarily a defense; only in the rare case where a state-law claim is wholly subsumed by the Copyright Act, with no extra element, does "complete preemption" allow recharacterization as a federal claim. *ML Genius* confirms that analysis in the contract context.

Here, while certain interests and assets described in the Amended Complaint may appear to fall within copyright "subject matter" (literary works and compilations), (Amend. Compl. ¶¶ 54-112), a non-exclusive implied license by conduct conveys no rights to bring infringement claims or assert rights under the Copyright Act, *see Graham v. James*, 144 F.3d at 236, and involve only "ordinary principles of state contract law" *See City of New York by and through FDNY v. Henriquez*, 768 F. Supp 3d 388 (E.D.N.Y. 2025) quoting *Privado Marketing Group LLC v. Eleftheria Rest Corp.*, No. 13-cv-3137 (R), 2017 WL 1167332 at *12 (S.D.N.Y Mar.. 27, 2017), and Plaintiff's causes of action are grounded in fiduciary, charitable, and governance duties that the Copyright Act does not address. (Amend. Compl. ¶¶183-269).

### A. Fiduciary, Charitable-Gift, and Governance Claims Have Extra Elements

Plaintiff's N-PCL and fiduciary-duty claims require proof of:

- the existence of a fiduciary relationship between ERI's directors/officers and RFLH as restricted donor successor.

- specific duties of care, loyalty, and obedience under N-PCL § 717 and § 513;
- breach of those duties by commercializing a restricted literary legacy contrary to donor intent; and
- resulting harm.

Those are extra elements not contained in any copyright infringement claim. A claim for infringement requires only ownership of a valid copyright and unauthorized copying of protected expression. It does not inquire whether a board member violated statutory fiduciary duties or misapplied charitable assets.

Courts have consistently held that claims based on breach of fiduciary duty, confidential relationship, or misuse of trust assets are not preempted because the duty element qualitatively distinguishes them from infringement.

**B. Unjust Enrichment, Constructive Trust, Accounting, and Faithless-Servant Claims Are Equitable Remedies for Fiduciary Breach, Not Surrogate Copyright Claims**

Defendants attempt to isolate the portion of Plaintiff's unjust-enrichment count that seeks restitution of "profits derived from exploitation of intellectual property retained and owned by Plaintiff" and to treat that strand as a disguised copyright claim. But the unjust-enrichment count, as pled, incorporates by reference the allegations of fiduciary breach, N-PCL violations, and misuse of restricted assets and seeks disgorgement of benefits obtained through that breach of duty.

Under New York law, unjust enrichment requires proof that (1) the defendant was enriched; (2) at plaintiff's expense; and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. That doctrine is routinely applied to

fiduciaries and corporate insiders misusing corporate or trust assets; it is not limited to copyright cases.

The Second Circuit's decision in *Briarpatch* is not to the contrary. There, the unjust-enrichment claim was preempted because it sought to recover profits from exploitation of a film based solely on unauthorized use of a novel, with no fiduciary or charitable overlay. 373 F.3d at 306–07. Likewise, in *ML Genius*, the contract claim was preempted because it did nothing more than bar copying of song lyrics, and defendants owed no special duties beyond those covered by copyright law.

By contrast, Plaintiff's unjust-enrichment, constructive-trust, and accounting claims here seek equitable relief for abuse of nonprofit governance powers and violation of donor restrictions, which the Copyright Act does not regulate.

Even if one could conceptually carve out a narrow subset of enrichment allegations as closely paralleling copyright infringement, 28 U.S.C. § 1454(b)–(c) would require remand of the non-copyright claims and permit remand of any supplemental ones under § 1367(c). There is no basis to keep this entire governance and donor-rights case in federal court.

### C. Declaratory Relief Does Not "Arise Under" the Copyright Act

Plaintiff's declaratory judgment claim regarding ownership and control of *Evergreen Review* assets seeks a state-law declaration under CPLR § 3001 that:

- RFLH, as Rosset's successor, holds certain rights in the *Evergreen* literary and trademark legacy; and
- ERI and its board exceeded their authority and violated N-PCL duties by commercializing and assigning those assets contrary to the 1998 Rider and donor intent.

As *T.B. Harms* and *Bourne* teach, such disputes over who owns what and under what contract are ordinarily matters of state law. 339 F.2d at 828; 68 F.3d at 631–32. The fact that the subject matter (literary works) is copyrightable does not convert every ownership or license dispute into a federal claim.

**D. Nonexclusive Licenses and § 204 Are Resolved Under State Law**

Defendants argue that resolving Plaintiff's declaratory claim will require the Court to construe 17 U.S.C. § 204(a), which requires a signed writing for a transfer of "ownership" of a copyright or exclusive rights. But the Amended Complaint alleges, at most, that Grove/Atlantic granted ERI – and through it, RFLH – nonexclusive, implied licenses to use certain Evergreen content within a restricted charitable framework.

Under Second Circuit law, non-exclusive licenses do not require a 17 U.S.C. § 204 writing and may be implied by conduct. *See Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998) ("A nonexclusive license may be granted orally, or may even be implied from conduct."); ABKO *Music, Inc. v. Sagan*, 50 F4th 309, 320 (2d Cir. 2022). "A nonexclusive license 'permit[s] licensee to use the copyrighted material and be granted to multiple licensees'" *Davis v. Blige*, 505 F.3d 90, 99, 100 (2d Cir. 2007) (distinguishing transfers of ownership from licenses); *see also Photographic Illustrators Corp. v. Orgill, Inc.*, 953 F.3d 56, 62 (1st Cir. 2020) (addressing criteria and conduct giving rise to implied non-exclusive sublicense).

Thus, resolving whether ERI and its board exceeded the scope of any nonexclusive license, breached donor restrictions, or misused charitable assets does not require this Court to decide any novel or substantial question under § 204. Those issues are resolved under ordinary New York contract and nonprofit law.

**E. Section 1454 Does Not Create Jurisdiction Where None Exists**

Defendants also invoke 28 U.S.C. § 1454, which permits removal of “a civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents … or copyrights.” But § 1454 does not expand the class of claims that “arise under” federal law; it merely allows any party to remove qualifying cases and relaxes some timing rules.

Section 1454(b)–(c) then expressly instructs that:

- claims that are neither a basis for removal nor within the court’s original or supplemental jurisdiction must be remanded; and
- the court may remand supplemental claims under § 1367(c).

Courts construing § 1454, such as the Federal Circuit ~~in *NeuroRepair,*~~ *Inc. v. Nath Law Group*, have vacated judgments and ordered remand where state-law malpractice claims involving patent prosecution did not “arise under” § 1338, even though patent law concepts surfaced in the background.

Because Plaintiff’s operative pleading asserts no claim “arising under” the Copyright Act, § 1454 provides no independent basis for federal jurisdiction.

**F. The Holistic Approach Under In re Jackson Confirms No Preemption of RFLH's State Claims**

The gravamen of the Amended Complaint is alleged misconduct and misuse of restricted charitable donations under New York's N-PCL governance regime that regulates the operations of New York not-for-profit corporation and its officers, directors, and persons, and which encompasses a strong state interest. *See In re Jackson*, 972 F.3d at 37. Fiduciary duties of loyalty and obedience (N-PCL § 717) overlay all claims, transforming them into a suit for nonprofit accountability, enforceable in state court. See Amend. Compl. ¶¶ 1–27, 113–139.

Even under the Second Circuit's holistic approach to Copyright Act preemption, RFLH's claims are not equivalent to federal infringement actions and thus fall outside § 301's scope. In *In re Jackson*, 972 F.3d 25, 36-38 (2d Cir. 2020), Judge Leval instructed courts to evaluate the "gravamen" or "fundamental nature" of a state claim—not merely its isolated elements—to determine functional equivalence to § 106 exclusive rights, rejecting "hyper-technical" dissections that ignore the claim's basic thrust. There, a right-of-publicity claim was preempted because its core sought to control unauthorized reproduction and distribution of a copyrighted sound recording, effectively "parlay[ing]" a non-copyright interest into de facto federal exclusives and undermining uniformity. *Id.* at 40. By contrast, the gravamen of RFLH's unjust-enrichment, declaratory-judgment, and fiduciary claims is the enforcement of relational and charitable duties—fiduciary self-dealing, ultra vires acts under N-PCL §§ 717 and 720, and donor-imposed restrictions under EPTL § 8-1.1—not policing the reproduction or display of *Evergreen Review* issues. Amend. ~~Cmpl~~Compl. ¶¶ 150-200, 258-259. These claims target the diversion of economic benefits from a restricted charitable mission, requiring proof of breach of trust, faithless servitude, and equitable estoppel arising from Rosset's conduct in granting a non-exclusive educational license. Such extras qualitatively distinguish the claims from § 106, as they vindicate state-law interests in corporate governance and gift enforcement, not work-specific control. *See Forest Park Pictures v. Universal Television Network,* 683 F.3d 424, 430, (2d Cir. 2012) (fiduciary extras defeat equivalence under holistic review).

This holistic lens further underscores remand: Unlike *Jackson*'s work-centric publicity claim, where the persona was inseparable from the copyrighted sample, RFLH's suit holistically polices the abuse of a fiduciary relationship over donated assets, with copyrights and trademarks serving as mere factual context for breaches of duty. *In re Jackson*, 972 F.3d at 38 (preemption

requires claim's “essential character” to mirror infringement). Defendants' attempt to reframe the Amended Complaint as a disguised copyright dispute ignores this relational core, which implicates New York's expertise in not-for-profit oversight and charitable trusts—issues Congress left to the states. Allowing removal would disrupt the federal-state balance by federalizing ordinary equitable remedies. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Thus, *Jackson* reinforces that RFLH's claims belong in state court, free from § 301's preemptive shadow.

## III. PLAINTIFF’S NEW YORK TRADEMARK, UNFAIR-COMPETITION, AND G.B.L. CLAIMS ARE PURELY STATE-LAW AND NOT PREEMPTED BY THE LANHAM ACT

Plaintiff’s declaratory and unfair-competition claims regarding the marks “Evergreen” and “Evergreen Review” are grounded in New York common-law trademark and GBL §§ 349 and 360-l, not the Lanham Act. See Remand Aff. at Exh. A and C.

### A. Plaintiff Seeks Only State-Law Declaratory and Equitable Relief

The Amended Complaint’s declaratory judgment claim under CPLR § 3001 seeks a declaration that:

- RFLH is the senior common law user of the “Evergreen” and “Evergreen Review” marks in New York, based upon Rosset’s use of the mark dating to 1955. Remand Aff., Exhibit A and C. The marks were assigned by him to Grove, Inc., the publishing company he acquired in 1951. Rosset registered the Evergreen mark with the USPTO on behalf of Grove, Inc. After he sold Grove, Inc. to a company owned by Anne Getty in 1985, together with its wholly owned *for-profit* New York subsidiary Evergreen Review, Inc., Rosset’s strong relationship with Morgan Entrekin brought him full circle. Entrekin acquired Grove in a merger with Atlantic in 1993, and renewed copyright registrations for the 1950s through 1984 Evergreen Review print series and

renewed the mark with the USPTO in 2005. Thereafter, Rosset reacquired by course of conduct an implied non-exclusive license to use the Evergreen mark for Evergreen Review, online by implied, non-exclusive sublicense to ERI, while he used the license for other ~~project~~projects. See generally Remand Aff. at Exhibit A (Plaintiff000814-00815) and Exhibit C (passim). Subsequently, Grove/Atlantic abandoned the Mark, and it was cancelled in 2016. Rosset had passed away four years earlier, but his widow and the beneficiary of his Estate had continued to use the implied, non-exclusive license in New York. Remand Aff. at Exhibit A (Plaintiff 000795), Amended. Comp. at ¶¶ 55-72.

- Defendants' subsequent uses, including a 2020 USPTO application filed by Oakes ian assumed name of a non-existent entity, violate RFLH's state-law rights and constitute unfair competition and passing off under New York law. *Id.*

Critically, Plaintiff does not seek cancellation of Defendants' void ab initio federal registration under ~~15~~ U.S.C. § 1119 or any Lanham Act damages. That remedial choice is deliberate. Claims to cancel or modify federal registrations are within the exclusive domain of federal courts and the USPTO and are not part of this action.

New York courts routinely adjudicate common-law trademark and unfair-competition disputes involving unregistered marks or intrastate uses, even where federal registrations exist in the background. *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476–77 (2007).

**~~B.~~ ~~RBCI~~ and Volpone Are Factually Distinguishable**

Defendants' removal theory ~~implicitly~~ relies on cases such as *RBCI Holdings, Inc.* ~~*v. LifeLink Pharm., Inc.*~~*v. Drinks Ams. Holdings Ltd.*, No. 07 Civ. 2877(DC), 2008 WL 759339 (S.D.N.Y. Mar. 20, 2008) and *Ryan v. Volpone Stamp Co*~~.~~., 107 F. Supp. 2d 369 (S.D.N.Y. 2000). In those cases, plaintiffs asserted

explicit Lanham Act claims, sought relief to cancel or alter federal registrations, or framed their declaratory relief causing the court to adjudicate federal trademark validity as the central issue.

Here, by contrast:

- Plaintiff's claims are expressly limited to state-law declarations of common-law priority and state-law remedies under GBL §§ 349 and 360-l.
- The Lanham Act does not provide the rule of decision for any cause of action.
- Any discussion of federal registration, assignment, or incontestability appears only in the factual background, as one component of Defendants' alleged misuse of a restricted charitable legacy.

As the Supreme Court held in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014), state and federal regimes for unfair competition and false advertising are complementary, not mutually exclusive. Nothing in the Lanham Act transforms New York common-law trademark and GBL claims into federal causes of action.[2]

**IV. PLAINTIFF'S N-PCL FIDUCIARY AND GOVERNANCE CLAIMS PRESENT NOVEL AND PREDOMINANT STATE-LAW ISSUES**

Beyond preemption, the Amended Complaint centers on N-PCL governance duties and enforcement of restricted gifts. These are classic state-law questions:

- ~~Did ERI's board and officers breach duties of care, loyalty, and obedience under N-PCL § 717 in commercializing a restricted literary legacy through a third-party publisher on terms allegedly inconsistent with donor intent?~~

[2] Assumed-name violations are closely tied to fiduciary obligations. ERI's use of an assumed name violated N-PCL 202(f) and G.B.L. § 130. See Remand Aff. at Exhibit A, C, D-F. That

conduct falls squarely within N-PCL §§ 717, 719, and 720 and is precisely the sort of governance dispute that New York State Supreme Courts—and especially the Commercial Division—have original jurisdiction to resolve and as to which the New York Attorney General also has oversight and enforcement authority.

- Did ERI's board and officers breach duties of care, loyalty, and obedience under N-PCL § 717 in commercializing a restricted literary legacy through a third-party publisher on terms allegedly inconsistent with donor intent?
- Did they violate N-PCL §§ 513 and 720 by transferring or encumbering restricted assets without the approvals and procedures mandated by New York law?
- What remedies – including accounting, surcharge, constructive trust, or removal of fiduciaries – are appropriate under New York nonprofit law?

Recent New York decisions, including *Bastidas v. Garcia*, 2024 N.Y. Slip Op. 50073(U) (Sup. Ct. Queens ~~Cnty.~~Co., Jan. 23, 2024), illustrate state courts' central role in adjudicating claims by owners and shareholders asserting unfair competition and misuse of corporate trademarks by insiders. There, a shareholder suing derivatively on behalf of a corporation alleged common-law trademark infringement and unfair competition regarding the "Mama's Empanadas" mark. The court denied summary judgment on those claims, finding factual disputes over authority and misuse of the mark, while analyzing fiduciary duties and corporate waste under state law.

New York Supreme Court (including the Commercial Division) is likewise the natural forum for N-PCL governance disputes. *See, e.g.*, ~~*Stern v. N.Y. State Nurses Ass'n*, 164 A.D.3d 548, 550 (1st Dep't 2018).~~*Sternklar v. Sternklar-Worenklein*, Index No. 651270/2021, 2024 NY Slip Op 34194(U) (Sup. Ct NY Co. Nov. 25, 2024) (Decision + Order On Motion). State courts have original jurisdiction over actions by members and directors to hold nonprofit boards accountable under N-PCL §§ 717, 719–720.

These are not the kinds of issues Congress, or the Supreme Court has entrusted to federal courts as a matter of exclusive or predominant federal interest.

## V. EVEN IF ANY FEDERAL ISSUE EXISTED, THE COURT SHOULD DECLINE

**SUPPLEMENTAL JURISDICTION UNDER § 1367(c)**

Even assuming arguendo that the background inclusion of references to the historical basis for Plaintiff's claims could be recharacterized as involving an embedded federal issue.– which they should not under the weight of authority against doing so under the facts and circumstances applicable here – this Court should decline supplemental jurisdiction and remand the entire action to state court.

Under 28 U.S.C. § 1367(c), a district court may decline supplemental jurisdiction where:

1. the state-law claims "raise a novel or complex issue of State law," or
2. "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."

Both factors are satisfied here:

- The N-PCL and charitable-gift issues are novel and complex, involving the intersection of donor-restriction enforcement, nonprofit governance, and state-law trademark concepts applied to a literary legacy.
- Those state-law issues predominate over any potential federal question; the case will turn on New York statutory and common law, and any federal issue would be peripheral.

*Royal Canin* confirms that once federal claims are out of the case, federal courts have no residual authority to retain purely state-law claims. 604 U.S. at 26–27. Here, the operative complaint never contained federal causes of action, and any suggestion of embedded federal issues is, at most, a strained reading of N-PCL and fiduciary claims. There is no good reason for this Court to entangle itself in the day-to-day governance of a New York not-for-profit corporation when New York's Commercial Division is designed precisely for such disputes.

## VI. THE REMOVAL WAS PROCEDURALLY DEFECTIVE AND UNTIMELY UNDER 28 U.S.C. § 1446

Although subject-matter jurisdiction is dispositive, the removal also suffers from procedural defects.

### A. Defendants Failed to Attach All "Process, Pleadings, and Orders" Required by § 1446(a)

Section 1446(a) requires a notice of removal to include "a copy of all process, pleadings, and orders served upon" the removing defendants. Defendants' initial Notice of Removal

omitted key filings, including Plaintiff's state-court submissions that underscored the state-law nature of the claims.

While courts sometimes treat such omissions as curable defects, others have remanded where the omissions prejudiced the plaintiff or obscured the state-court record. ~~*See, e.g., Baker v. Weber*, No. 19-cv-1093 (JPC), 2021 WL 4480998.~~ Here, the omissions came in a case where the central disputed issue is the precise scope of the state-court pleadings—a context where strict compliance is particularly important.

**B. Removal Was Untimely Under § 1446(b)**

To the extent Defendants contend their removal is premised on "complete preemption" of certain unjust-enrichment or declaratory claims, the factual and legal predicates for that theory were apparent from the original Complaint, which already:

- identified Evergreen literary content and marks as charitable assets;
- alleged misuse of those assets by ERI and its board; and
- sought equitable remedies tied to that misuse.

Under § 1446(b)(1) and (b)(3), the 30-day removal clock begins when the defendant can "ascertain" that the case is removable. Defendants cannot wait, litigate in state court, and only later remove when they think the legal landscape has shifted. Their reliance on the Amended Complaint as the first moment of removability is inconsistent with their own theory that Plaintiff's claims have always been "completely preempted."

At a minimum, the procedural posture underscores why fees are appropriate for the additional, unnecessary round of removal practice.

## VII. PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER § 1447(c)

Section 1447(c), provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) . In *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), the Supreme Court provided guidance as to the award of fees and costs:

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

546 U.S. at 141, 126 S.Ct. 704 (emphasis added; citations modified). The Second Circuit's recent analysis of the meaning of "unusual circumstances" decision in *City of New York v. Exxon Mobil Corp.*, 154 F4th 36, 46-51 (2d Cir. 2025) is consistent with *Martin*, and provides federal district judges with meaningful discretion: just fees may be awarded when defendants persist in pressing objectively reasonable but still be absurd and plainly meritless removals "designed to delay litigation and inflict costs." *Id*., *City of New York* at 51.

Here, removal appears to be part of a continuing effort by Defendant to engage in procedural maneuvers to thwart the discovery schedule in the state-court and impose costs upon Plaintiff. This Court therefore has basis to exercise its discretion to award fees under the unusual circumstances in which Plaintiff's state court claims pursuant to the N-PCL arise under an implied non-exclusive license to use and sub-license Grove/Atlantic's registered copyrights (*not-*

*ERI's registered copyrights*, as Defendants may have failed to clarify in their filing of AO 121 Form Copyright, (see ECF No. 10) in the print versions of Evergreen Review, Inc., and Plaintiff's New York common law trademark seniority arose due to cancellation of the Grove/Atlantic Evergreen mark.

Given the clear absence of a federal cause of action in the operative complaint, the narrow scope of § 301 preemption, the well-established independence of New York's N-PCL and common-law trademark regimes, and *Royal Canin*'s recent reaffirmation that plaintiffs are masters of their complaints, Defendants lacked an objectively reasonable basis to remove this case. See *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140–41 (2005).

At a minimum, the Court should award Plaintiff its reasonable fees and costs incurred in responding to the Amended Notice of Removal and prosecuting this motion to remand.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Remand this action to the Supreme Court of the State of New York, New York County, Commercial Division, pursuant to 28 U.S.C. § 1447(c); and

2. Award Plaintiff its costs and reasonable attorneys' fees incurred as a result of Defendants' improper removal, with the amount of fees to be determined upon submission of appropriate documentation.

Dated: New York, New York
December 12, 2025

Respectfully submitted,

**SMALLMAN + SNYDER LAW GROUP ||**
**SMALLMAN LAW PLLC**

/s/

David Brian Smallman
43 West 43rd Street, Suite 242
New York, NY 10036

(t) (917) 414-0182
(f) (212) 202-5200
dbs@smallmanlaw.com

*Counsel for Plaintiff*
*Rosset Family Legacy Holdings LLC*

**CERTIFICATION**

DAVID BRIAN SMALLMAN, an attorney duly admitted in the State of New York and authorized to practice before this Court, certified under Local Civil Rule 7.1(c) as follows:

1. I am counsel to Plaintiff Rosset Family Legacy Holdings LLC and the Managing Member of Smallman + Snyder Law Group || Smallman Law PLLC.

2. The foregoing Memorandum of Law complies with the word count limit set forth in Local Civil Rule 7.1(c) in that it contains, exclusive of caption, index, and signature blocks, ~~6398~~6412 words, according to the word count function of the word-processing program used to prepare the Memorandum.

Dated: New York, New York
December 12, 2025

/s/ David Brian Smallman (DS-5316)_
David Brian Smallman