UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
*Rosset Family Legacy Holdings LLC v. Oakes*
No. 1:25-cv-09398-LAP

# EXHIBIT A

*Enbridge Energy, LP v. Nessel*
608 U.S. 67, 146 S. Ct. 1074 (2026)

146 S.Ct. 1074
Supreme Court of the United States.

ENBRIDGE ENERGY, LP, et al., Petitioners
v.
Dana NESSEL, Attorney General of Michigan, ON BEHALF OF the People of the State of MICHIGAN

No. 24–783
|
Argued February 24, 2026
|
Decided April 22, 2026

**Synopsis**

**Background:** Michigan Attorney General brought state action against operator of petroleum pipeline, which traversed bottomlands of strait pursuant to easement from Michigan, alleging easement was void and that operations violated Michigan law, given risk of oil spill from pipeline. Operator removed action 887 days after receiving complaint, and the United States District Court for the Western District of Michigan, Janet T. Neff, J., 2022 WL 19005621, denied Attorney General's motion to remand. Attorney General appealed. The United States Court of Appeals for the Sixth Circuit, Griffin, Circuit Judge, 104 F.4th 958, reversed and remanded. Operator filed petition for writ of certiorari, which was granted.

In a unanimous opinion, the Supreme Court, Justice Sotomayor, held that statute providing that notice of removal of a civil action or proceeding shall be filed within 30 days of the defendant receiving either a complaint or summons, whichever period is shorter, is not subject to equitable tolling; abrogating *Gillis v. Louisiana*, 294 F.3d 755; *Loftin v. Rush*, 767 F.2d 800.

Affirmed.

*Syllabus*[*]

Petitioners (collectively Enbridge) own and operate Line 5, a 645-mile petroleum pipeline, 4 miles of which traverse the Straits of Mackinac pursuant to a 1953 easement granted to Enbridge's predecessor by the State of Michigan. On June 27, 2019, the Michigan Attorney General filed suit in Michigan state court seeking to halt Enbridge's operation of Line 5 by having the 1953 easement declared void and Enbridge's continuing operations declared unlawful. Enbridge was served with the complaint on July 12, 2019. Rather than removing the case to federal court within the 30-day deadline required by 28 U.S.C. § 1446(b)(1), Enbridge litigated in state court for months. In November 2020, more than a year after Enbridge's removal deadline had lapsed, the Michigan Governor issued a notice revoking the 1953 easement and filed a separate lawsuit in state court against Enbridge. In that suit, unlike in the Attorney General's suit, Enbridge timely removed to federal court, and the parties agreed to hold the Attorney General's case in abeyance while federal proceedings progressed. After the District Court denied the Governor's motion to remand, finding federal-question jurisdiction satisfied, the Governor voluntarily dismissed her lawsuit. On December 15, 2021—887 days after receiving the Attorney General's complaint—Enbridge removed this action to federal court. The Attorney General moved to remand, arguing that removal was untimely under § 1446(b)'s 30-day deadline. The District Court denied the motion, holding that equitable principles justified excusing Enbridge's untimely removal, and certified its order for interlocutory appeal. The Sixth Circuit reversed, holding that although § 1446(b)(1)'s deadline is nonjurisdictional, several features of § 1446(b)(1) and the overall removal scheme rebutted any presumption of equitable tolling. Thus, the lawsuit had to be remanded to the Michigan state court. This Court granted certiorari to resolve a divide among the Courts of Appeals on whether § 1446(b)(1) is subject to equitable tolling.

*Held*: Because § 1446(b)(1)'s text, structure, and context are inconsistent with equitable tolling, Enbridge's removal was untimely. Pp. 1081 – 1086.

(a) The fact that the 30-day removal deadline in § 1446(b)(1) is nonjurisdictional does not automatically render it subject to equitable tolling. While jurisdictional requirements "cannot be waived or forfeited" and "do not allow for equitable exceptions," *Boechler v. Commissioner*, 596 U.S. 199, 203, 142 S.Ct. 1493, 212 L.Ed.2d 524, "[t]he mere fact that a time limit lacks jurisdictional force ... does not render it malleable in every respect," *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192, 139 S.Ct. 710, 203 L.Ed.2d 43. Some

nonjurisdictional rules remain "mandatory" and "are not susceptible" of equitable tolling. *Ibid.*

The Court need not decide whether § 1446(b)(1) qualifies as a statute of limitations subject to a presumption of equitable tolling because, even if the presumption applies, it can be "rebutted if 'there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply.' " *Arellano v. McDonough*, 598 U.S. 1, 7, 143 S.Ct. 543, 214 L.Ed.2d 315. Here, the text, structure, and context of § 1446(b)(1) demonstrate that Congress did not want the 30-day deadline to be equitably tolled.

The text of § 1446(b)(1) speaks in strict, mandatory terms, requiring that a notice of removal "shall be filed within 30 days." Although such mandatory language alone is not sufficient to rebut the presumption of equitable tolling, it is consistent with treating the deadline as mandatory and not subject to equitable tolling. Cf. *Boechler*, 596 U.S., at 204, 211, 142 S.Ct. 1493.

More important, and decisive here, is § 1446(b)(1)'s structure. An "explicit listing of exceptions," set forth in a detailed manner, strongly indicates "that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute." *United States v. Brockamp*, 519 U.S. 347, 352, 117 S.Ct. 849, 136 L.Ed.2d 818. That is especially so when the "specific exceptions" already "reflect equitable considerations." *Arellano*, 598 U.S., at 7, 143 S.Ct. 543. There are several such exceptions here. First, and functioning much like an equitable discovery rule, § 1446(b)(3) provides an extension when a case at first appears unremovable but it is later "ascertained that the case is" (or has become) removable. Congress thus "has already effectively allowed for equitable tolling" in one respect but not others. *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32. Section 1446(c)(1) also imposes a one-year cap on this rule in diversity cases, but creates an exception if a plaintiff acted in "bad faith," specifically "account[ing] for equitable factors" in a way that would be superfluous if § 1446(b)(1) already provided for equitable tolling more broadly. *Arellano*, 598 U.S., at 10, 143 S.Ct. 543.

Exceptions to the 30-day deadline outside of § 1446 confirm the point. For actions against foreign states, Congress specifically allowed "the time limitations of § 1446(b) ... [to] be enlarged at any time for cause shown." § 1441(d). Similar provisions exist for certain intellectual-property cases, see § 1454(b)(2), and cases involving fatal accidents, see § 1441(e)(1). Each provision explicitly incorporates § 1446(b)(1)'s time limit but modifies it to allow equitable, case-specific exceptions that would be inexplicable and unnecessary if Congress already understood § 1446(b)(1) to contain a cross-cutting equitable-tolling rule. Congress's treatment of removal in criminal proceedings provides additional confirmation. Under § 1455(b)(1), a criminal defendant must generally remove within 30 days after arraignment, but "for good cause shown [a court] may ... gran[t] ... leave to file ... at a later time." For civil cases, by contrast, Congress did not provide courts with a similar general power to extend the 30-day removal deadline.

"[T]he nature of the subject matter" here further underscores the unavailability of equitable tolling. *Arellano*, 598 U.S., at 14, 143 S.Ct. 543. The federal civil removal statutes have an "obvious concern with efficiency," *BP p.l.c. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 245, 141 S.Ct. 1532, 209 L.Ed.2d 631, and a "general interest in avoiding prolonged litigation on threshold nonmerits questions," *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 237, 127 S.Ct. 2411, 168 L.Ed.2d 112. Allowing equitable tolling would undermine Congress's manifest interest in resolving threshold removal questions early and conclusively, generating uncertainty and risking significant waste of resources. Cf. *Beggerly*, 524 U.S., at 49, 118 S.Ct. 1862. Pp. 1081 – 1084.

(b) Enbridge's counterarguments are not persuasive. Enbridge's argument that rebutting the presumption of equitable tolling requires the "clearest command" from Congress conflicts with the Court's repeated holdings that the presumption is rebutted where "Congress's choice is evident," *Arellano*, 598 U.S., at 14, 143 S.Ct. 543; where tolling would be "inconsistent with the text of the relevant statute," *Beggerly*, 524 U.S., at 48, 118 S.Ct. 1862; and where there is "good reason to believe Congress did not want equitable tolling to apply," *Brockamp*, 519 U.S., at 350, 117 S.Ct. 849. None of these decisions required the "clearest command" that Enbridge demands. Enbridge's attempt to characterize § 1446(b)(3) as an accrual rule rather than an exception does not account for the separate "bad faith" exception in § 1446(c)(1) or the many other provisions outside § 1446 that expressly allow courts to toll § 1446(b)(1)'s deadline "for cause shown." The fact that these provisions are located outside of § 1446 itself does not diminish their force; courts must consider equitable tolling's "incongruen[ce] with the statutory scheme" overall. *Arellano*, 598 U.S., at 13, 143 S.Ct. 543. Enbridge cannot identify any sensible reason why Congress would

have adopted so many express, specific equitable exceptions to § 1446(b)(1) if equitable tolling was already available for belated removals across the board. Finally, Enbridge's argument based on § 1447(c)'s treatment of defects in subject-matter jurisdiction does not support equitable tolling. Pp. 1084 – 1086.

104 F.4th 958, affirmed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

**Attorneys and Law Firms**

John J. Bursch, Caledonia, MI, for Petitioners.

Ann M. Sherman, Solicitor General, Lansing, MI, for Respondent.

John J. Bursch, Bursch Law PLLC, Caledonia, MI, Jeffery V. Stuckey, Dickinson Wright PLLC, Lansing, MI, Alice E. Loughran, Counsel of Record, Brendan Hammond, Steptoe LLP, Washington, DC, Phillip J. Derosier, Dickinson Wright PLLC, Detroit, MI, for Petitioners.

Dana Nessel, Michigan Attorney General, Ann M. Sherman, Michigan Solicitor General, Counsel of Record, Christopher M. Allen, Assistant Solicitor General, Keith D. Underkoffler, Assistant Attorney General, Environment, Natural Resources & Agriculture Division, Spencer D. Smith, Special Assistant Attorney General, Lansing, MI, for Respondent.

**Opinion**

Justice SOTOMAYOR delivered the opinion of the Court.

***1079** Under 28 U.S.C. § 1446(b)(1), a party sued in state court who prefers to proceed in federal court generally has 30 days after receiving notice of the state-court action to remove the lawsuit to federal court (if there are grounds for doing so). In this case, petitioners (collectively Enbridge) unquestionably did not meet § 1446(b)(1)'s 30-day deadline, instead waiting 887 days after being served with the Michigan Attorney General's state-court complaint before removing the case to federal court. Enbridge argues that the District Court nevertheless had equitable discretion to toll § 1446(b)(1)'s deadline and excuse this late filing. This Court disagrees. Because § 1446(b)(1)'s text, structure, and context are inconsistent with equitable tolling, Enbridge's removal was untimely and remand to the Michigan state court is required.

I

A

The right to remove a lawsuit from state to federal court "is entirely a creature of statute[,] and 'a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress.' " *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). Congress provided one such basis for removal in § 1441(a), which authorizes removal if a civil action "brought in a State court" is one over "which the district courts of the United States have original jurisdiction." For example, if a plaintiff sues in state court bringing federal claims or if the plaintiff and defendant are from different States and there is a sufficient amount in controversy, the defendant may remove to federal court. See §§ 1331, 1332(a).

For defendants seeking to remove under § 1441(a), the procedures for doing so are largely set forth in § 1446. Key here as to timing, the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt" of the "initial pleading" in that action, "or within 30 days after the service of summons upon the defendant[,] ... whichever period is shorter." § 1446(b). This 30-day default rule is subject to several exceptions in § 1446 and elsewhere. Section 1446(b)(3), for instance, extends the 30-day deadline if an initial pleading did not provide a basis for removal but it is later "ascertained that the case is one which is or has become removable." As detailed below, this rule, in turn, is subject to an exception (which itself has yet another exception). § 1446(c)(1); see *infra*, at 1082 – 1083. Outside of § 1446 itself, Congress has also allowed later removal, for cause shown, in ***1080** specific scenarios. See, *e.g.*, § 1441(d) (suits against foreign states); § 1441(e)(1) (certain suits involving mass accidents with more than 75 fatalities); § 1454(b)(2) (certain suits involving intellectual property); see also § 1455(b) (removal of criminal actions).

After a case is removed, any motion to remand the case to state court must be filed within 30 days of the notice of removal. § 1447(c). An order remanding a case generally "is not reviewable on appeal or otherwise." § 1447(d).

B

Enbridge[1] owns and operates the 645-mile-long Line 5 pipeline, which runs from northwestern Wisconsin through Michigan and into Canada. Line 5 is part of a pipeline network that transports petroleum products to refineries across the Midwestern United States, Ontario, and Quebec. Between Michigan's Upper and Lower Peninsulas, a 4-mile strip of Line 5 traverses the Straits of Mackinac pursuant to a 1953 easement granted to Enbridge's predecessor by the State of Michigan, which has long owned the Strait's bottomlands.

On June 27, 2019, the Michigan Attorney General filed this lawsuit in Michigan state court, seeking to halt Enbridge's operation of Line 5. She alleged that the 1953 easement is void and that Enbridge's operations violate Michigan law, given the risk of an oil spill from the pipeline. On July 12, 2019, the Attorney General served Enbridge with a complaint. Over the following months, Enbridge did not remove the case to federal court and instead briefed cross-motions for summary disposition and participated in oral argument on those motions, all in state court. Enbridge argued, among other things, that the state-law claims against it were preempted by federal law.

On November 13, 2020, more than a year after Enbridge's 30-day deadline to remove had lapsed, Michigan Governor Gretchen Whitmer issued a notice of revocation of the 1953 easement, calling for Line 5 to be shut down. At the same time, the Governor filed a separate lawsuit in Michigan state court against Enbridge to enforce the notice, bringing state-law claims very similar to those in the Attorney General's lawsuit. Instead of litigating the Governor's suit in state court, Enbridge timely removed that action to federal court, arguing that the Federal District Court had jurisdiction under § 1331 because the case involved a substantial federal question. See *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (recognizing a limited category of state-law claims that support federal-question jurisdiction because they necessarily raise substantial questions of federal law). Enbridge did not remove the Attorney General's suit at that time; instead, the parties agreed to hold the Attorney General's case (that is, this case) in abeyance while federal proceedings progressed in the Governor's suit.

The Governor moved to remand her case to state court, arguing that the case did not raise a significant federal issue. Soon after, the Government of Canada submitted *amicus* filings arguing that shutting down Line 5 would implicate a 1977 treaty between Canada and the United States and impair foreign relations between the two countries. On November 16, 2021, the District Court denied the Governor's motion to remand, concluding that federal-question jurisdiction was satisfied because the claims necessarily implicated substantial ***1081** federal questions under two federal statutes and the 1977 treaty. The Governor voluntarily dismissed her lawsuit not long after that ruling.[2]

On December 15, 2021, following the District Court's favorable remand ruling in the Governor's suit, Enbridge removed this action to federal court. At that point, 887 days had elapsed from when Enbridge received the Attorney General's complaint. The Attorney General moved to remand, arguing, as relevant here, that removal was untimely under § 1446(b)'s 30-day deadline. The District Court denied the motion, holding that equitable principles justified excusing Enbridge's untimely removal. It then certified its order denying remand for interlocutory appeal under § 1292(b).

After accepting the interlocutory appeal, the Sixth Circuit reversed. 104 F.4th 958 (2024). Enbridge, the Circuit held, unquestionably missed the 30-day removal deadline. As for the District Court's conclusion that § 1446(b)(1)'s deadline should be equitably tolled, the Circuit held that although statutes of limitations are presumptively subject to such tolling, several features of § 1446(b)(1) and the overall removal scheme rebutted that presumption. Section 1446(b)(1) thus could not be equitably tolled, and the lawsuit had to be remanded to the Michigan state court.

Enbridge filed a timely petition for a writ of certiorari, seeking review of the Sixth Circuit's holding that § 1446(b) is not subject to equitable tolling. Other Courts of Appeals have held that equitable tolling is available under § 1446(b)(1) in at least some circumstances. See *Gillis v. Louisiana*, 294 F.3d 755, 759 (CA5 2002); *Loftin v. Rush*, 767 F.2d 800, 805 (CA11 1985). This Court granted certiorari to resolve the divide among the Courts of Appeals. 606 U. S. 930, 145 S.Ct. 2843, 222 L.Ed.2d 1128 (2025).

II

Enbridge's argument proceeds in three steps, each critical to prevailing here. First, it contends that § 1446(b)(1)'s 30-day removal deadline is not jurisdictional. Second, because

the deadline is nonjurisdictional, Enbridge argues that it is presumptively subject to equitable tolling. Third, according to Enbridge, nothing rebuts the presumption that this deadline can be equitably tolled.

At the first step, there is rightly no dispute. "No one contends that [§ 1446(b)(1)] is jurisdictional," given that "it 'does not expressly refer to subject-matter jurisdiction or speak in jurisdictional terms.' " *McIntosh v. United States*, 601 U.S. 330, 337, 144 S.Ct. 980, 218 L.Ed.2d 307 (2024); see 104 F.4th at 969 (explaining why § 1446(b)(1) is not jurisdictional). That much is crucial for Enbridge's case, as "[j]urisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and, as relevant to this case, do not allow for equitable exceptions." *Boechler v. Commissioner*, 596 U.S. 199, 203, 142 S.Ct. 1493, 212 L.Ed.2d 524 (2022). "The mere fact that a time limit lacks jurisdictional force, however, does not render it malleable in every respect." *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192, 139 S.Ct. 710, 203 L.Ed.2d 43 (2019). Some nonjurisdictional rules remain "mandatory" and "are not susceptible ***1082** of the equitable approach" that Enbridge urges. *Ibid.*

That brings us to steps two and three in Enbridge's argument. The Attorney General argues that, at each step, Enbridge confronts an independent reason why § 1446(b)(1), though nonjurisdictional, is not subject to equitable tolling. First, she disagrees that any presumption of equitable tolling applies to § 1446(b)(1). This Court "ha[s] only applied [the presumption of equitable tolling] to statutes of limitations." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 13–14, 134 S.Ct. 1224, 188 L.Ed.2d 200 (2014); see *Hallstrom v. Tillamook County*, 493 U.S. 20, 27, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). According to the Attorney General, § 1446(b)(1) is not a statute of limitations because it does not "extinguis[h] a tardy claim (the function of a statute of limitations)," *Arellano v. McDonough*, 598 U.S. 1, 7, 143 S.Ct. 543, 214 L.Ed.2d 315 (2023), and instead addresses "a forum issue that arises only *after* a claim for relief has been brought." Brief for Respondent 28; see *Young v. United States*, 535 U.S. 43, 47, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (explaining that a limitations period "prescribes a period within which certain rights ... may be enforced"). Second, the Attorney General argues that even if § 1446(b)(1) is a statute of limitations to which the presumption of equitable tolling applies, the presumption is rebutted here because such tolling conflicts with § 1446(b)(1)'s text, structure, and context.

As in prior cases, the Court need not parse whether § 1446(b)(1) qualifies as a statute of limitations subject to a presumption of equitable tolling because the result, even if the presumption applies, "is straightforward." *Arellano*, 598 U.S., at 7, 143 S.Ct. 543; see *United States v. Brockamp*, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). "The presumption is rebutted if 'there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply.' " *Arellano*, 598 U.S., at 7, 143 S.Ct. 543 (alteration in original). Here, the kinds of evidence the Court generally considers on this question shows that Congress did not want § 1446(b)(1) to be equitably tolled.

Starting with the text of § 1446(b)(1), this provision speaks in strict, mandatory terms. It requires that a notice of removal "shall be filed within 30 days" of the defendant receiving either a complaint or summons, "whichever period is shorter." To be sure, this kind of mandatory language is not sufficient, on its own, to rebut the presumption of equitable tolling. See, *e.g.*, *United States v. Kwai Fun Wong*, 575 U.S. 402, 410–411, 420, 135 S.Ct. 1625, 191 L.Ed.2d 533 (2015) (deadline stating that claim " 'shall be forever barred' " was subject to equitable tolling). The strict phrasing of § 1446(b)(1), however, is at least consistent with treating its deadline as mandatory and not subject to equitable tolling. Cf. *Boechler*, 596 U.S., at 204, 211, 142 S.Ct. 1493 (concluding that equitable tolling applied to a provision that merely set the deadline by which a person " 'may' " file a petition with the Tax Court).

More important, and decisive here, is § 1446(b)(1)'s structure. This Court has repeatedly held that an "explicit listing of exceptions," set forth in a detailed manner, strongly indicates "that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." *Brockamp*, 519 U.S., at 352, 117 S.Ct. 849; see, *e.g.*, *Arellano*, 598 U.S., at 7, 143 S.Ct. 543. That is because "[i]t would be inconsistent with [a] comprehensive scheme" that includes a default deadline and several exceptions "to extend [the deadline] still further through the doctrine of equitable ***1083** tolling," outside of those specified exceptions. *Arellano*, 598 U.S., at 7, 143 S.Ct. 543. This "structural inference" is "heighten[ed]," moreover, if the "specific exceptions" at issue already "reflect equitable considerations." *Id.*, at 9, 143 S.Ct. 543.

That is exactly the case here. Within § 1446(b) itself, Congress provided that the ordinary 30-day deadline does not apply when a case at first appears unremovable, but a later "pleading, motion, order or other paper" reveals that it

is (or has become) removable. § 1446(b)(3). In that case, the defendant has another 30 days to remove from "receipt" of the paper "from which it may first be ascertained that the case is ... removable." *Ibid.* This extension is limited, however, if the basis for removal is diversity of citizenship. Such "[a] case may not be removed under subsection (b)(3) ... more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." § 1446(c)(1).

This highly detailed scheme matters for at least two reasons. First, the "ascertain[ment]" provision in § 1446(b)(3) functions much like a discovery rule, giving defendants extra time to remove after the date on which they learned or should have learned that a case was removable. In doing so, Congress "has already effectively allowed for equitable tolling" in this one respect but not others, which cuts against the availability of broader tolling. *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). Second, in creating the "bad faith" exception to § 1446(c)(1)'s 1-year bar in diversity cases, Congress specifically "accounted for equitable factors," by providing additional time for removal, in a way that would be superfluous if § 1446(b)(1) already broadly provided for equitable tolling in all cases. *Arellano*, 598 U.S., at 10, 143 S.Ct. 543.

Exceptions to § 1446(b)(1)'s 30-day deadline outside of § 1446 drive home the point. For actions against foreign states, Congress specifically allowed "the time limitations of section 1446(b) ... [to] be enlarged at any time for cause shown." § 1441(d). So too for actions involving certain intellectual-property rights. See § 1454(b)(2). For certain cases involving fatal accidents, removal generally "shall be made in accordance with section 1446 ... except that," as to timing, an action may be removed "at a later time with leave of the district court." § 1441(e)(1). Each of these provisions explicitly incorporates § 1446(b)(1)'s time limit but modifies it to allow equitable, case-specific exceptions. Each provision would be inexplicable and unnecessary, however, if Congress already understood § 1446(b)(1) to contain a cross-cutting rule allowing equitable tolling.

Stepping beyond the removal of civil cases, Congress's treatment of removal in criminal proceedings provides additional confirmation that Congress did not want equitable tolling under § 1446(b)(1). Under § 1455(b)(1), a criminal defendant with a removable case must generally remove within "30 days after the arraignment in the State court," but "for good cause shown [a court] may ... gran[t] the defendant or defendants leave to file the notice at a later time." In criminal cases, Congress thus did grant federal courts a broad, generally applicable power to allow late removals. For civil cases, by contrast, Congress did not provide courts with a similar general power to extend the 30-day removal deadline. Instead, through the limited exceptions discussed above, Congress specified the cases in which it wanted to authorize equitable tolling. Enbridge's position would eliminate the variation between these two removal contexts, ***1084** but "[w]hen Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94, 143 S.Ct. 713, 215 L.Ed.2d 1 (2023).

Finally, and to "garnish an already solid argument," "the nature of the subject matter" here underscores the unavailability of equitable tolling. *Arellano*, 598 U.S., at 14, 143 S.Ct. 543; see *Brockamp*, 519 U.S., at 352, 117 S.Ct. 849. The federal civil removal statutes have an "obvious concern with efficiency," *BP p.l.c. v. Mayor and City Council of Baltimore*, 593 U.S. 230, 245, 141 S.Ct. 1532, 209 L.Ed.2d 631 (2021), and a "general interest in avoiding prolonged litigation on threshold nonmerits questions," *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 237, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007). That is reflected not only in the short deadline for removal itself, but also in the strict 30-day deadline for seeking remand of a removed action, § 1447(c), and the default rule that remand orders are not appealable, § 1447(d); see *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 640–642, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006) (explaining that this interest in efficiency and finality necessarily sacrifices some measure of accuracy).

Allowing equitable tolling of § 1446(b)(1)'s deadline would undermine Congress's manifest interest in resolving threshold removal questions early and conclusively. Under the rule the Court adopts today, plaintiffs that sue in state court usually can be confident that, after § 1446(b)(1)'s deadline has elapsed, the forum question has been put to rest and the case will proceed in the chosen court. Under the rule Enbridge favors, to the contrary, the possibility of a late removal would hang over a case, generating uncertainty and risking significant waste of resources in one forum before a possible belated removal to another. Cf. *Beggerly*, 524 U.S., at 49, 118 S.Ct. 1862 (holding equitable tolling unavailable based in part on the "cloud of uncertainty" such tolling would produce, in a context where "certainty" was of "special importance"). Because Enbridge's approach would upset the "balance struck

by Congress" in the removal statutes, *Hallstrom*, 493 U.S., at 30, 110 S.Ct. 304, these underlying concerns provide yet another reason to conclude that equitable tolling is not available under § 1446(b)(1).

III

Enbridge's counterarguments are not persuasive. It starts by attempting to raise the bar for rebutting the presumption of equitable tolling. In its view, it is not enough to show that tolling is inconsistent with the overall statutory scheme; the question is instead whether Congress has provided the " 'clearest command' " that equitable tolling should not apply. Brief for Petitioners 32 (quoting *Holland v. Florida*, 560 U.S. 631, 646, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)). This Court, however, has never applied such a requirement in this context, and doing so would conflict with the Court's repeated holdings that the presumption has been rebutted where "Congress's choice is evident," *Arellano*, 598 U.S., at 14, 143 S.Ct. 543, where tolling would be "inconsistent with the text of the relevant statute," *Beggerly*, 524 U.S., at 48, 118 S.Ct. 1862, and where there is "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply," *Brockamp*, 519 U.S., at 350, 117 S.Ct. 849. None of these decisions required the "clearest command" that Enbridge demands. They simply looked to text, structure, and context and asked if there were "good reasons" to conclude that tolling ***1085** should not be available.[3] As discussed above, such reasons are present here.

On the text of § 1446(b)(1), Enbridge argues that the 30-day deadline is short and focused on litigants' conduct, not courts' authority, which (according to Enbridge) makes it akin to other provisions the Court has held subject to equitable tolling. See, *e.g.*, *Boechler*, 596 U.S., at 209, 142 S.Ct. 1493. This Court, however, has found other deadlines that speak at least in part to a litigant's conduct, and with even shorter deadlines, not to be subject to equitable tolling when surrounding context led to that conclusion. See, *e.g.*, *Brockamp*, 519 U.S., at 351, 354, 117 S.Ct. 849 (claim had to " 'be filed by the taxpayer' " within certain periods); cf. *Nutraceutical*, 586 U.S., at 191, 194, 139 S.Ct. 710 (similar, with 14-day window).[4]

Seeking to discount the many exceptions to § 1446(b)(1)'s deadline, Enbridge disputes whether they are really "exceptions" at all. As to § 1446(b)(3), which applies to later-"ascertained" removability, Enbridge argues it is more akin to an accrual rule for a limitations period, which this Court has distinguished from a true " 'exception[n].' " *Holland*, 560 U.S., at 647, 130 S.Ct. 2549. Even if so, however, that would not account for the separate "bad faith" exception to the 1-year deadline for diversity cases in § 1446(c)(1).

Nor does Enbridge's rejoinder account for the many other provisions, outside of § 1446, expressly allowing courts to toll § 1446(b)(1)'s 30-day deadline "for cause shown" and the like. See *supra*, at 1083 – 1084. Enbridge labels these as "comprehensive legislation targeting a particular area for reform," not "exception[s] to Section 1446(b)." Reply Brief 16–17; see *id.*, at 16–20. The problem is that, in the most important respect, these statutes are not "comprehensive": They do not set their own deadlines, but rely on § 1446(b)(1) and modify it. Critically, they often do so precisely to allow consideration of the very same equitable factors that, on Enbridge's theory, are already built into § 1446(b)(1). Enbridge also suggests that because these exceptions are located outside of § 1446 itself, they should carry less force. The Court, however, has already disapproved of such "[l]aser focu[s]" on a single provision in isolation. *Arellano*, 598 U.S., at 12, 143 S.Ct. 543. Instead, courts must consider equitable tolling's "incongruen[ce] with the statutory scheme" overall. *Id.*, at 13, 143 S.Ct. 543. The fact that the timing "scheme" here is set forth in provisions that extend beyond § 1446 is not a meaningful difference from *Arellano*.

Enbridge also attempts to distinguish this case from *Arellano* on the ground that ***1086** the timing rule at issue in *Arellano* had 16 distinct exceptions while § 1446(b)(1) has fewer, and points out that this Court has found equitable tolling to apply even when a deadline has an explicit exception. See, *e.g.*, *Holland*, 560 U.S., at 647–648, 130 S.Ct. 2549. Enbridge is correct on the numbers, but this inquiry is not a mere counting exercise. In *Holland*, the key point was not that there was only one exception. It was that the exception at issue (tolling the time for seeking federal habeas relief while an application for state postconviction relief is pending) was "easily explained" by a "special need for an express provision" accounting for state-court litigation, which "undermine[d]" any inference that Congress did not intend for equitable tolling more broadly to apply. *Id.*, at 648, 130 S.Ct. 2549; see *Young*, 535 U.S., at 53, 122 S.Ct. 1036 (similar). Here, to the contrary, Enbridge cannot identify any sensible reason why Congress would have adopted so many express, specific equitable exceptions to § 1446(b)(1) if equitable

tolling was already available for belated removals across the board.

Finally, Enbridge points to § 1447(c)'s 30-day deadline for motions to remand, which does not apply if a court lacks subject-matter jurisdiction. As Enbridge sees it, Congress's requirement of remand even outside of the 30-day deadline for lack of subject-matter jurisdiction, but not for other defects like untimeliness, suggests that Congress intended to treat untimeliness less harshly than the lack of jurisdiction, including by allowing equitable tolling. Enbridge's conclusion does not follow from its premises. Section 1447(c) reflects the unique stringency that applies to jurisdictional rules, which "cannot be waived or forfeited." *Boechler*, 596 U.S., at 203, 142 S.Ct. 1493; cf. *Nutraceutical*, 586 U.S., at 192, 139 S.Ct. 710 (explaining that even "mandatory" rules not subject to equitable tolling may be "subject to waiver and forfeiture"). As explained above, however, not all nonjurisdictional rules can be equitably tolled. See *supra*, at 1081 – 1082. The fact that § 1447(c) requires remand at any time for jurisdictional defects, but not for nonjurisdictional defects like untimeliness, therefore in no way implies the availability of equitable tolling.[5]

IV

Assuming § 1446(b)(1) is a statute of limitations and is therefore subject to the presumption of equitable tolling, the statute's text, structure, and surrounding context provide good reason to find the presumption rebutted. Accordingly, § 1446(b)(1)'s 30-day deadline cannot be equitably tolled. The Court of Appeals therefore correctly held that Enbridge's notice of removal was untimely and that this action must be remanded to the Michigan state court. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

**All Citations**

608 U.S. 67, 146 S.Ct. 1074, 224 L.Ed.2d 587, 2026 Daily Journal D.A.R. 3017, 31 Fla. L. Weekly Fed. S 635

Footnotes

* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

1 Petitioners are Enbridge Energy, LP, Enbridge Energy Co., Inc., and Enbridge Energy Partners, L.P. For simplicity, the Court refers to them together as Enbridge.

2 Similar issues remain pending in another federal action. In November 2020, Enbridge sued the Governor seeking affirmative relief, and in December 2025, the District Court granted summary judgment to Enbridge, concluding that the Governor's efforts to shut down Line 5 were preempted. See *Enbridge Energy, LP v. Whitmer*, 813 F.Supp.3d 777, 792–93 (WD Mich.).

3 Enbridge relies heavily on this Court's use of the "clearest command" language in *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), but *Holland* used that language to explain why the presumption was "reinforced" in that case: The Court will not read a statute to " 'displace' " the " 'equitable principles' [that] have traditionally 'governed' the substantive law of habeas corpus ... absent the 'clearest command.' " *Id.*, at 646, 130 S.Ct. 2549. That is a different issue than displacing the presumption of equitable tolling.

4 Enbridge tries to distinguish *Brockamp* on the ground that it set forth its deadline in a "highly detailed technical manner." *United States v. Brockamp*, 519 U.S. 347, 350, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). It is unclear, however, that 28 U.S.C. § 1446(b)(1), with its two alternative deadlines, choice of whichever period is "shorter," and many exceptions, is meaningfully less "detailed" than the statute in *Brockamp*. 519 U.S., at 351, 117 S.Ct. 849 (discussing statute prohibiting claims for tax refunds " 'within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed ... within 2 years from the time the tax was paid' ").

5 The Court resolves only the applicability of equitable tolling to § 1446(b)(1), and does not resolve the applicability of other equitable doctrines like waiver, forfeiture, and estoppel.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.